Eddie A. CURTIS, Plaintiff,

and

J. David Carroll, Plaintiff–Intervenor,

v.

F. Whitten PETERS, Secretary of the Air Force, Defendant.

No. CIV. A. 98–0875 PLF.

United States District Court, District of Columbia.

April 24, 2000.

Eugene R. Fidell, Feldesman Tucker Leifer Fidell & Bank, Washington, DC, for Plaintiffs.

Armando Omar Bonilla, Civil Division, Commercial Litigation, Branch, Dept. of Justice, Washington, DC, for Defendant.

## OPINION

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court on the parties' cross-motions for summary judgment and on plaintiff Eddie A. Curtis' motion for class certification. Both plaintiff and plaintiff-intervenor J. David Carroll (collectively "plaintiffs") contend that the Air Force violated its statutory directives when it used certain complex procedures to review their candidacies for promotion from Major to Lieutenant Colonel. Because plaintiffs were denied promotions in two consecutive years, they were discharged under the Air Force's "up or out" policy. Plaintiffs ask to be reinstated in the Air Force Reserves and have their promotions considered once again using the proper procedures. The Court finds that the Air Force's procedures were not arbitrary, capricious or contrary to law. It therefore grants defendant's motion for summary judgment and denies plaintiffs' motions.

## I. BACKGROUND

Plaintiff Eddie A. Curtis brought this lawsuit on April 7, 1998 to contest the procedures by which the Air Force reviewed his candidacy for promotion from Major to Lieutenant Colonel in the Air Force Reserves. Specifically, Major Curtis was considered for promotion in June 1995 for Fiscal Year 1996 and in June 1996 for Fiscal Year 1997. Major Curtis was denied promotion each time. Because the Air Force's codified policy is that Reserve officers who fail to be promoted after two consecutive efforts must be discharged, Major Curtis was discharged on May 27, 1997. *See* 10 U.S.C. §§ 14506, 14513.

Plaintiff-intervenor J. David Carroll also was considered for promotion from Major to Lieutenant Colonel in Fiscal Years 1996 and 1997. He, too, was denied promotion during the same two years and discharged under the "up or out" policy. For some reason that is not clear from Major Carroll's complaint, he was not discharged until June 25, 1999.

During Fiscal Years 1996 and 1997, promotion decisions were governed by 10 U.S.C. §§ 8362 and 8367.[1] In relevant part, Section 8362 provides:

(a) Under such regulations and in such number as he may prescribe, the Secretary of the Air Force, or such authority as he directs, shall from time to time appoint and convene *selection boards to consider* reserve commissioned officers for promotion under this chapter . . . .

(e) A recommendation for promotion *must be made by the majority of the total membership of the board.*

(f) An officer eligible for consideration for promotion by a board under this chapter is entitled to send a letter, through official channels, calling attention to any matter of record in the armed forces concerning himself that he considers important to his case . . . . A letter sent under this subsection *may not be considered by a selection board* unless it is received by the time the board convenes.

10 U.S.C. § 8362(a), (e), (f) (repealed) (emphasis added). Section 8367 provides:

(b) When an officer in the reserve grade of first lieutenant, captain, or major must be considered under section 8366(a) of this title for promotion be-

---

1. These statutory provisions have since been repealed by Congress, but the effective date of the repeal was after the events at issue here.

*See* Reserve Officer Personnel Management Act, 108 Stat. 963 (1994) (effective date of repeal was October 1, 1996).

cause of length of service, the Secretary may—

(1) furnish to the board *a list of officers to be considered* for promotion to the grade concerned; and

(2) direct the board to recommend the officers on that list who it considers *fully qualified for promotion.*

10 U.S.C. § 8367(b) (repealed) (emphasis added).

On the basis of these statutory directives, the Air Force created a complicated system to review candidates for promotion in the Air Force Reserves. The process began with the appointment of a selection board of 25 members. The 25 members were then divided into five panels of five members each. In the promotion reviews at issue in this case, three of the panels were charged with reviewing "line" officers such as plaintiffs, while the other two panels reviewed "non-line" officers.

After a practice session intended to adjust the variations in scoring between panel members in order to ensure consistency, the file of each candidate was randomly distributed to one of the five panels for its review. Each panel received the files of about 300 candidates to review. The five members of the panel to which a file was assigned then reviewed each file and individually scored each candidate on a scale of 6 to 10. The scores of the five members were added up to give each candidate a total score. After completion of this initial round of scoring, the candidates before each panel were ranked in order of their scores.

Each panel then began the second round of the selection process by identifying the score category that would result in the percentage of candidates getting promoted that was equal to the average percentage that had been promoted in the past five years—what the Court will call the "past select rate score." For example, if an average of 33 percent of candidates had been promoted over the previous five

years, then the panel would begin the process by reviewing and voting on all candidates that received a score equal to the candidate ranked number 100 out of the 300 applicants, *i.e.*, behind 33 percent of the candidates. For each candidate who received the "past select rate score," the panel voted by secret ballot whether the candidate was "fully qualified" for promotion. The panel members were instructed that they must find beyond a reasonable doubt that a candidate was fully qualified before they could vote to promote him or her. If the vote was 4–1 or 5–0 for or against promoting a particular candidate, the majority decision was final. If the vote was 3–2 in either direction (a "split" vote), the records were opened for discussion and then put to a second vote by panel members. The majority position on whether to promote a candidate after the second vote was binding; at that point a candidate receiving as few as three "yes" votes was considered fully qualified for promotion.

After voting on the candidates with the "past select rate score," the panel repeated the voting process for candidates with scores that were incrementally higher and incrementally lower than the "past select rate score," beginning with the scores immediately above and immediately below the "past select rate score," until it determined a score at which it found that all of the candidates for promotion were fully qualified and a score at which it rejected all of the candidates for promotion as not fully qualified. These two scores were called the "select all" score and the "select none" score, and the area in between the two scores was called the "gray area." The panel then automatically recommended promotions without further discussion or vote for all of the candidates whose scores were equal to or higher than the "select all" score. It also recommended promotions for all of the candidates who the panel had already discussed and found to be fully qualified from within the "gray area." The panel did not recommend those candidates at or below the "select

none" score and did not recommend those candidates who were expressly rejected within the "gray area." Each panel member reviewed the final list of candidates considered by the panel of which he or she was a member to ensure that the panel's decision on each candidate was transcribed correctly.

The five panel members did not review the decisions of the other four panels or the files presented to the other panels, but each of the 25 board members nevertheless signed a report certifying that (1) the board had "carefully reviewed the record of each officer submitted to it for consideration," (2) "[v]oting was done by secret ballot," and (3) "[i]n the opinion of a majority of the voting members [of the board], the officers recommended are fully qualified for promotion to the grade of lieutenant colonel, Reserve of the Air Force." Administrative Record ("AR") at 187–91, 386–90.

Finally, the entire process was overseen by a non-voting Board President who had the power to intervene in a few situations. First, if during the initial round of scoring there was a discrepancy of two or more points between the scores of two panel members and the members could not close the gap between their scores after discussion, the President would intervene and either mediate the dispute or give the record to another panel to score. Second, the President was responsible for general oversight of the panels' scoring. If the President believed that any candidate's record was being scored by a panel in a manner inconsistent with the scoring of the overall board, he or she could direct another panel to review it and could determine which score better reflected the actual merit of the candidate. Finally, during the second round of review, the President reviewed records within the "gray area" to ensure consistency between the panels. If the President perceived an inconsistency, he or she could direct a panel to reconsider the record of an applicant.

## II. DISCUSSION

### A. Standard of Review

Plaintiffs contend that the procedures used by the Air Force to review their applications for promotion were contrary to law for four reasons: (1) the procedures used did not result in the candidates being "considered" by the full board, but only by a panel consisting of one-fifth of all board members, and did not result in a recommendation being made by a "majority" of the full board; (2) the Board President had the power to override the voting members by deciding which panel's votes would count; (3) panel members were instructed to determine if a candidate was qualified "beyond a reasonable doubt" without any statutory basis for that standard; and (4) panel members were instructed to make comparative judgments despite the fact that they were to determine if each candidate was "fully qualified."

 Under the Administrative Procedure Act, the Court may set aside agency actions, findings or conclusions only when they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). The standard of review is governed by the familiar *Chevron* doctrine:

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction of the statute . . . . Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based

on a permissible construction of the statute.

*Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *see North Broward Hospital District v. Shalala,* 172 F.3d 90, 93 (D.C.Cir.1999); *Small v. United States,* 158 F.3d 576, 580–81 (Fed.Cir. 1998).

While deference under *Chevron* is usually given in the context of an agency regulation or rule or an administrative adjudication, the Court should still "defer to an agency's interpretation of a statute even if proffered outside administrative adjudication or rulemaking so long as [the court is] assured it is the 'official interpretation.'" *General Services Admin. v. Federal Labor Relations Auth.,* 86 F.3d 1185, 1188 (D.C.Cir.1996); *see also OSG Bulk Ships, Inc. v. United States,* 921 F.Supp. 812, 825 (D.D.C.1996), *aff'd,* 132 F.3d 808 (D.C.Cir.1998). In particular, when the agency's interpretation of a statute is "longstanding and consistent," the Court should defer to the agency's interpretation. *FDIC v. Philadelphia Gear Corp.,* 476 U.S. 426, 438, 106 S.Ct. 1931, 90 L.Ed.2d 428 (1986); *see Association of Bituminous Contractors, Inc. v. Apfel,* 156 F.3d 1246, 1251–52 (D.C.Cir.1998) (quoting *Auer v. Robbins,* 519 U.S. 452, 462, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997)) (court should defer to agency's interpretation "as long as it represents the agency's 'fair and considered judgment on the matter'"). As the use of the selection procedures at issue in this case by the Air Force has been in existence for at least 14 years prior to their application in this case, *see* H.R.Rep. No. 97–141, 97th Cong., 1st Sess., at 12 (1981), *reprinted in* 1981 U.S.C.C.A.N. 24, 35, the Court will apply the deferential standard of *Chevron* in its review. *See Small v. United States,* 158 F.3d at 580–81 (deference should be given to the review of the Air Force's procedures for determining promotions).

Finally, the actions of the Air Force are entitled to even greater defer-ence than are other agency actions because decisions of the military regarding its personnel are reviewed under the APA by "an unusually deferential application of the 'arbitrary and capricious' standard ...." *Kreis v. Secretary of the Air Force,* 866 F.2d 1508, 1514 (D.C.Cir.1989). As the Supreme Court has noted, "[o]rderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters." *Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 97 L.Ed. 842 (1953); *see also Goldman v. Weinberger,* 475 U.S. 503, 507, 106 S.Ct. 1310, 89 L.Ed.2d 478 (1986).

B. *Were Plaintiffs' Records "Considered" By The Board And Recommendations Made By The "Majority Of The Board"?*

Plaintiffs first argue that the Air Force violated the relevant statutes because their records were never "considered" by the entire 25–member board and the promotion decisions were never voted on by a "majority of the total membership of the board," as required by statute. *See* 10 U.S.C. §§ 8362(e), 8367(b). Plaintiffs maintain that the plain language of the statutes does not allow anything less than consideration by the entire convened 25–member board acting together. In addition to the statutory language itself, plaintiffs also cite Defense Department Directive 1320.12, which provides that "[b]oard members are to base their recommendations on the material in each officer's official military record," as further evidence that the entire board must consider each candidate. *See* DOD Directive 1320.12, Plaintiff Eddie A. Curtis' Cross–Motion, Appendix at 126. In particular, plaintiffs argue that board members cannot comply with the directive and "base their recommendations on the material in each officer's official military record" if 20 of the 25 board members never even looked at the officer's file. *Id.*

Defendant counters that the statute does not address what procedures may be used to arrive at a majority decision on promotions and that its procedures were in keeping with the statute. So long as a majority of all board members formally adopts the findings and recommendations of each panel as that of the entire board, defendant maintains that the statute has been followed. As Congress has not "directly spoken to the precise question at issue," defendant contends that the Court should uphold defendant's interpretation of the statute as a permissible one under *Chevron*. *See Chevron v. Natural Resources Defense Council*, 467 U.S. at 842, 104 S.Ct. 2778 (if court determines Congress has not directly addressed precise question at issue, question for court is whether agency's interpretation is based on permissible construction of statute).

Defendant's argument is consistent with the recent decision of the United States Court of Appeals for the Federal Circuit, which considered the application of nearly identical procedures to the review of applicants for promotion among the non-reserve officers of the Air Force. The Federal Circuit held:

Congress has not spoken to the issue of whether the selection board must conduct itself as a collective body. The statutory provisions do not contain any specific methodology that the selection board must use in carrying out its deliberative process. In addition, the parties direct us to nothing in the legislative history that would reveal Congress' intent with regard to these issues and we have found no guidance in our review of the legislative history.

Given the facts before us, we also hold that the Air Force's interpretation of the statute is a permissible one. The statute does not require that a majority determination be based on a knowing

review and conscientious consideration of each officer's record. Nothing in the plain language of the statute requires first-hand knowledge on the part of the deliberators of an officer's record. All that is required is a numerical showing that more than half of the board members approved or disapproved of the matter before them. The Air Force, like the other branches of the military, is confronted with establishing a selection process pursuant to statute that is fair in view of the extensive number of individual officers who may be eligible for consideration. A review of a selected number of individuals by sub-panels who use common and identifiable criteria is an efficacious and equitable means to establish the final rankings that are in fact approved by a majority of the members of the board. This court is not in a position under *Chevron* to impose its statutory construction for that of the Air Force when it finds that the statutory construction provided by the agency is a permissible one. In sum, we agree with the trial court that "[t]here is ... no reason why the business of coming to a 'majority' consensus cannot be accomplished through collective approval of the findings and recommendations of a sub-group—i.e., a selection panel." [citation omitted]. In addition, using the signing of the Board Report as a means for the members to both express their approval of the recommended candidates and make the required certification is permissible under the statutory scheme as well.

*Small v. United States*, 158 F.3d at 581.[2]

Plaintiffs first argue that *Small* is distinguishable from this case. They say that the language here—"A recommendation for promotion must be made by the majority of the total membership of the board"—more clearly indicates the requirement of collective action than did the

**2.** Since the decision in *Small*, the United States Court of Federal Claims has applied the same reasoning with regard to the procedures for reviewing promotions in the Air

Force Reserves. *See Fluellen v. United States*, 44 Fed. Cl. 97, 103–04 (Fed.Cl.1999); *see also Neptune v. United States*, 38 Fed. Cl. 510, 515 (Fed.Cl.1997).

language in *Small*—"the officer receives the recommendation of a majority of the members of the board." *Compare* 10 U.S.C. § 8362(e) (repealed) *with* 10 U.S.C. § 616(c)(1). This is a distinction without a difference. The key language in the statutes is identical; each requires that the "recommendation" be made by the "majority" of the selection board. For the purposes of plaintiffs' argument, the requirements found in the two statutes are the same. The question therefore is whether the Federal Circuit was correct in finding that "the Air Force's interpretation of the statute is a permissible one." *Small v. United States*, 158 F.3d at 581.

 While this is a case that tests the bounds of deference under *Chevron*, this Court concurs with the Federal Circuit. Although it is unlikely that any member of Congress envisioned that the board would act in any way other than as a collective body, Congress did not provide any direction or guidance in the language of the statute—or even in the legislative history—regarding the proper selection procedures the Air Force must follow. It is not the Court's role to impose its interpretation of the statute on the Air Force if the Air Force's own interpretation is a permissible one under the statute. The fact is that the statutes at issue "neither condemn nor condone the use of panels." *Small v. United States*, 37 Fed. Cl. 149, 155 (Fed. Cl.1997), *affirmed*, 158 F.3d 576 (Fed.Cir. 1998). Since the statutes do not establish, or provide any guidance regarding, the proper selection procedures for the Air Force to use, and because the Court must apply an "unusually deferential application of the 'arbitrary and capricious' standard" to decisions of the military, *Kreis v. Secretary of the Air Force*, 866 F.2d at 1514, the Court concludes that defendant's interpretation of the statute is a permissible one.

**3.** While neither party presents any evidence as to whether the Board President in fact intervened in the review of plaintiffs' files in either Fiscal Year 1996 or Fiscal Year 1997, the Court will not decide this case on the basis of whether or not plaintiffs have stand-

### C. Did The Board President Impermissibly Override The Voting Members?

Plaintiffs also argue that the Air Force review process was arbitrary and capricious and contrary to law because the Board President had the power to impose his or her will on the members of the selection panel.[3] In particular, plaintiffs contend that under the review process, the Board President had the ability to override the wishes of the voting members because he could reject the scoring of one panel, have a second panel score the candidate and then decide which score to use. Defendant does not dispute that the Board President had this authority. Defendant argues, however, that the final voting was done by the board and panel members and not by the Board President, and that the Board President's role was only one of "quality control."

 Plaintiffs' argument regarding the Board President fails for the same reasons as their earlier argument regarding the need for collective action. Under defendant's interpretation of the statute, which this Court has already found to be permissible, *see supra* at 7–8, it is the board members' final consent to the promotion lists that constitutes the recommendation of the majority of the board. The procedure used to arrive at the final lists is irrelevant; it is the board's final consent to those lists that is the legally operative event. The Board President's ability to influence what score a candidate gets at an earlier juncture therefore does not usurp the board's power to make the ultimate decision.

### D. Was Use Of The "Beyond A Reasonable Doubt" Standard Arbitrary And Capricious?

Plaintiffs argue that the instructions provided to board members were arbitrary

ing to raise this issue. All evidence regarding this question was uniquely in the control of defendant, and defendant represented at oral argument that all such evidence has been destroyed.

and capricious and contrary to law because they included an instruction that the members must find "beyond a reasonable doubt" that a candidate was "fully qualified" before voting to promote him or her. In particular, prior to the selection process in Fiscal Years 1996 and 1997, the board members were given the following instruction:

The board will use the fully qualified method of selection. Fully qualified is a positive assessment. Officers whose records do not indicate *beyond a reasonable doubt* that they have the capacity and ability to perform the duties of the next higher grade, or that they possess the potential for a successful career in the Reserve of the Air Force, should not be found qualified.

A.R. at 194, 393 (emphasis added). While plaintiffs concede that the statute is completely silent on the standard the Air Force should apply in this process, they argue that "reasonable doubt" is a wholly inappropriate and unreasonable standard because traditionally it is a criminal standard of proof that has no place in the administrative review of employees. Plaintiffs also maintain that the Air Force does not use the "reasonable doubt" instruction any more, indicating that its earlier use must have been arbitrary and capricious.

Plaintiffs further contend that the Air Force's guidance to board members defining "fully qualified" was recently changed in a manner that indicates the inappropriateness of the reasonable doubt standard. Specifically, at one time the guidance required that the board recommend for promotion "all eligible officers whose qualifications and performance of duty, as determined by the majority of the board members [, c]learly indicate that the officer would be capable of performing the duties normally associated with the next higher grade." Plaintiff Eddie A. Curtis' Cross–Motion, Appendix at 81 (emphasis added). When the guidance was amended in 1996, the Air Force

removed the adverb "clearly" so that the guidance stated that the majority of the board members must find that the officer's qualifications "indicate[ ] the officer is capable of performing duty at the next higher grade." *Id.* at 104.

While plaintiffs' arguments may provide a valid policy argument for the use of a different standard more appropriate to the administrative process, the Court cannot conclude that the Air Force's interpretation is impermissible. The statute is silent on the matter, allowing the Air Force wide discretion regarding the degree of confidence it may require in order to promote an applicant. Decisions on who should be in military leadership positions, and what comfort level the decision-maker should have regarding the qualifications of candidates for such positions, should be left to the expertise of the military and not made by the courts. *See Kreis v. Secretary of the Air Force,* 866 F.2d at 1514. In view of the Air Force's experience in evaluating the leadership needs of the armed forces, the Court will defer to the Air Force's conclusion that use of the reasonable doubt standard was permissible.

*E. Did The Board Impermissibly Apply A "Best Qualified" Standard Instead Of The "Fully Qualified" Standard?*

Plaintiffs' final argument is that the instructions given to the board are so replete with comparative language that the board members must have compared the candidates to determine who was "best qualified"—the standard applicable to promotions among non-Reserve officers—instead of looking at each candidate individually to determine if he or she was "fully qualified." For example, before the selection process began, the board members were instructed that they must "subjectively assess each officer's relative potential" and that they would "be comparing the records of officers ... with other officers." A.R. at 76–77, 273–74. Because the "fully qualified" standard is supposed

to result in the promotion of all officers who are found to be capable of performing at the next level, irrespective of an officer's abilities relative to his or her peers, plaintiffs argue that the comparative language of the instructions is contrary to the statutory directives. *See* 10 U.S.C. § 8367(b) (repealed) (board should "recommend the officers on that list who it considers fully qualified for promotion").

 Plaintiffs' argument fails when the quoted language is placed in the context of the entire set of instructions given to board members. All of the quotations provided by plaintiffs come from the guidance on how the board members should evaluate the candidates in the initial round of scoring intended to *rank* the candidates. Comparative evaluations of course are essential in order to rank any set of candidates. Once the candidates were ranked, however, the panel members reviewed them under the "fully qualified" standard. Under the Air Force's complex procedures, the panel reviewed candidates as far down the list of ranked candidates as it could to still find "fully qualified" candidates. The Court therefore concludes that the Air Force's procedure to evaluate candidates for promotion was not contrary to the statutory requirement that it promote all "fully qualified" candidates.

### F. Plaintiffs' Motion for Class Certification

 Because the Court grants defendant's motion for summary judgment, it will deny plaintiffs' motion for class certification as moot. There is no reason to certify a class after the Court has already determined that the class members would not be entitled to relief. *See Bayshore Resources Co. v. United States*, 2 Cl.Ct. 625, 628 n. 1 (Cl.Ct.1983) ("[T]he other members of the [proposed] class should not be invited to board a sinking ship").

An Order and Judgment consistent with this Opinion will be issued this same day.

SO ORDERED.

### ORDER AND JUDGMENT

Upon consideration of the parties' cross-motions for summary judgment and the oppositions and replies thereto, and having fully considered the oral arguments ably presented by counsel, and for the reasons stated in the Opinion filed this same day, it is hereby

ORDERED that defendant's motion for summary judgment is GRANTED; it is

FURTHER ORDERED that plaintiff Eddie A. Curtis' motion for summary judgment is DENIED; it is

FURTHER ORDERED that plaintiff-intervenor J. David Carroll's motion for summary judgment is DENIED; it is

FURTHER ORDERED that plaintiff Eddie A. Curtis' motion for class certification is DENIED as moot; it is

FURTHER ORDERED that JUDGMENT is entered for defendant; it is

FURTHER ORDERED that this Order shall constitute a FINAL JUDGMENT in this case; and it is

FURTHER ORDERED that this case is dismissed with prejudice from the docket of this Court. This is a final appealable order. *See* Rule 4(a), Fed. R.App. P.

SO ORDERED.