Crown v. Fitzwilliam, NH          CV-01-210-M   05/30/02
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Crown Atlantic Company LLC,
     Plaintiff


     v.                                    Civil No. 01-210-M
                                           Opinion No. 2002 DNH 109
Town of Fitzwilliam, New Hampshire
and Fitzwilliam Planning Board
     Defendants


                           O R D E R


     Crown Atlantic Company LLC ("Crown Atlantic") has sued the

Town of Fitzwilliam, New Hampshire ("the Town") and the

Fitzwilliam Planning Board ("the Board") in three counts,

asserting violations of 47 U.S.C. §§ 332(c)(7)(B)(i)(II) and

(iii) (Count I) and N.H. REV. STAT. ANN. ("RSA") § 677:15 (Count

III).  Crown Atlantic also seeks money damages (Count II).  All

three claims arise from the Board's denial of Crown Atlantic's

request for a waiver of two provisions of the Town's Wireless

Communications Facility Ordinance ("WCFO").[1]  Before the court

_____

     [1] Crown Atlantic sought permission to construct a
telecommunications tower on Upper Troy Road, outside the WCFO's
Wireless Communications Overlay District ("the overlay
district"), and to exceed the WCFO's forty-five-foot height
limitation by sixty feet.

are cross-motions for summary judgment.  For the reasons given below: (1) both motions are denied, without prejudice, as to Counts I and III; and (2) Crown Atlantic's motion is denied, and defendants' motion is granted, as to Count II.

Turning first to Count II, neither 47 U.S.C. § 332(c)(7) nor RSA 677:15 provides for an award of money damages against a local land-use board.  Section 332(c)(7) is intended to preserve the authority of local land-use boards, consistent with the limitations set out in subsection (B).  Under subsection (B)(i)(I), the Town is barred from "prohibiting the provision of personal wireless services," either expressly or effectively. See Town of Amherst, N.H. v. Omnipoint Communications Enters., Inc., 173 F.3d 9, 13-15 (1st Cir. 1999).  But there is nothing in the statute suggesting that parties in Crown Atlantic's position are entitled to monetary compensation when the approval they seek takes longer than expected.  See id. at 17 ("Congress conceived that [balancing local autonomy with federal limitations] would produce (albeit at some cost and delay for the carriers) individual solutions best adapted to the needs and desires of particular communities.")  Because neither legal theory under

which Crown Atlantic has sued provides for an award of money damages, defendants' motion for summary judgment, as to Count II, is granted.

As for Counts I and III, both motions for summary judgment are denied, without prejudice. The court notes the First Circuit's preference for individualized local solutions rather than "'cookie cutter' solutions" imposed by courts in cases such as this. Id. By denying summary judgment, the court does not mean to encourage further litigation, but anticipates that Crown Atlantic and the Town will take the last few steps necessary to develop an acceptable local solution, rather than forcing the court to impose one by default.

In this case, Crown Atlantic has not displayed the kind of inflexibility at issue in Town of Amherst, and cannot fairly be charged with following a "one-proposal strategy." Id. at 15. Rather, Crown Atlantic approached the Board with a proposal that respected the WCFO's non-waivable requirement that towers be placed no less than 3.5 miles apart (R. at 406-07), and, throughout the application process, Crown Atlantic appears to

3

have been responsive to suggestions made by the Board.  The court notes, in particular, Crown Atlantic's willingness to: (1) move the proposed tower to the west side of Upper Troy Road (to protect views of Mt. Monadnock); (2) reduce the height of the tower to 105 feet; (3) to the extent feasible, disguise the tower as a tree; (4) conduct propagation studies for the Bard site and the steeple of the Town Hall; and (5) perform a balloon test at the VFW site.

For its part, the Town has also demonstrated a responsible and flexible approach to what are often trying issues.  The Town: (1) granted Crown Atlantic a height waiver, and approval, for a tower on Route 12, south of the town center ("the southern tower"); and (2) recognized both the necessity of approving a second tower to serve the area north of the Pinnacle, as well as the likelihood that such a tower will require at least one, if not two waivers (height, and location outside the overlay district).  In addition, the Board has reasonably expressed a legitimate interest in locating Crown Atlantic's second tower outside residential districts, if possible.

4

In short, both the Board and Crown Atlantic have attempted to find an acceptable, if not ideal, resolution of the siting issue. Whether federal intervention is required at this point, however, is uncertain. Perhaps such intervention is inevitable, but the parties ought to exhaust every avenue of amicable resolution before this court undertakes to declare the outcome.

Several matters deserve further consideration by the parties as they attempt to resolve the siting issue. For example, it appears beyond dispute that: (1) with only the southern tower in service, there is a significant gap in wireless telephone coverage north of the Pinnacle (Administrative Record (hereinafter "R.") at 162); and (2) Crown Atlantic has the right to build one or more towers to fill that service gap, see Omnipoint Communications MB Ops., LLC v. Town of Lincoln, 107 F. Supp. 2d 108, 117 (D. Mass. 2000) (quoting Cellular Tel. Co. v. Zoning Bd. of Adjustment of the Borough of Ho-Ho-Kus, 197 F.3d, 64, 70 (3d Cir. 1999)) ("local zoning policies and decisions have the effect of prohibiting wireless communication services if they result in 'significant gaps' in the availability of wireless services [within the jurisdiction']). One way or another, Crown

Atlantic has a right to put up at least one more tower in Fitzwilliam. The only real questions are height, location, and the degree of input the Planning Board will have.

The WCFO, though no doubt well intentioned, seems to restrict the Board's ability to guide the siting process. Given the relative ineffectiveness of forty-five-foot towers in places with the kind of topography and tree cover that Fitzwilliam has (R. at 162), and the non-waivable requirement of a 3.5-mile separation between towers, it seems highly unlikely that any set of towers fully compliant with the WCFO could provide wireless service without significant gaps. Moreover, while the Board is empowered to waive the WCFO's height limitation, and may permit towers outside the overlay district, it cannot waive the requirement of a 3.5-mile separation between towers.

This court, of course, is not bound to honor the local separation requirement if adherence to it would result in a significant gap in coverage. Thus, the Town has some incentive to resolve this matter with Crown Atlantic on its own terms, rather than leaving it to the court to resolve. Perhaps the

parties can find achievable gap-filling solutions that are preferable to one imposed under the federal statute.

In passing, the court notes that, as the record stands, the "substantial evidence" proffered by the Board to support its decision to deny Crown Atlantic's request for a waiver seems to fall short of the mark. The small handful of subjective objections included in this administrative record pale in comparison to the objective evidence of aesthetic harm presented in Southwestern Bell Mobile Systems v. Todd, 244 F.3d 51, 61 (1st Cir. 2001). If not for the perhaps unexplored option of locating a tower on Route 119, Crown Atlantic's motion for summary judgment as to Count I may have proved meritorious, and could have led to an order permitting construction of the proposed tower at the Upper Troy Road site. However, in light of the possibility (not adequately addressed in the record) that a tower requiring only one waiver, for height, could be constructed within the overlay district on Route 119 and fill the identified service gap north of the Pinnacle, it would be premature for the court to remove local obstacles to construction of the proposed tower on Upper Troy Road.

7

Plainly, the various topographic and legal realities of this case significantly limit the options available to the parties. Under federal law, the Town must permit telecommunication towers sufficient to allow Crown Atlantic to fill the significant gap in coverage north of the Pinnacle, and there seem to be relatively few locations in which a suitable tower or towers can be placed. But the record lacks two key pieces of information.

First, the record does not include a map depicting the location of the southern tower. Without that location, and with no way to locate the 3.5-mile exclusionary zone around the southern tower, the court cannot discern where the next tower could be located, in compliance with the separation provision of the WCFO. While the court is not strictly bound by that requirement, Fitzwilliam is probably better served by a tower location that meets the separation requirement than by a location that does not.

Second, the record appears to contain no serious discussion or substantive evidence related to the possibility of locating a tower on the western portion of Route 119, within the overlay

8

district.[2]  As the court has noted, a location on Route 119 could have the advantage of requiring one waiver rather than two.

Because the parties themselves are close to resolving the siting issue, the Planning Board is far better suited than the court to make the best siting decision for Fitzwilliam, and, in any event, the administrative record is insufficient to allow the court to decide whether Crown Atlantic's request for a waiver should have been granted.  Accordingly, both motions for summary judgment are denied, without prejudice.

Before additional dispositive motions are filed, Crown Atlantic and the Town should explore the possibility of locating a tower along Route 119.  After giving due consideration to that possibility, if it proves unworkable, the Town ought to give

---

[2] While the minutes of the May 1, 2001, Board meeting indicate that the lack of discussion of that option by Crown Atlantic contributed to the Board's decision to deny a waiver to construct a tower on Upper Troy Road, when the Route 119 option was first raised by a member of the public, on April 17, the Board did not ask Crown Atlantic to conduct balloon tests or propagation studies, as it had with regard to several other alternative locations.  Given Crown Atlantic's willingness to study other alternative sites at the Board's request, it seems a bit unfair for the Board to have based its denial on Crown Atlantic's failure to investigate a site in which the Board expressed no interest.

serious thought to granting whatever waivers may be necessary to permit Crown Atlantic to fill in the service gap north of the Pinnacle. Given the substantial good faith exhibited by Crown Atlantic, as disclosed in the record, and in light of the statutory mandate for "expeditious resolution," Town of Amherst, 173 F.3d at 17 n.8 (citing 47 U.S.C. §§ 332(c)(7)(B)(ii) & (v)), it is likely that judicial relief will shortly follow the Town's failure to resolve the service gap problem.

To conclude, plaintiff's motion for summary judgment (document no. 12) and defendant's motion for summary judgment (document no. 11) are both denied without prejudice, as to Counts I and III, while the defendants' motion for summary judgment, as to Count II, is granted.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 30, 2002

cc: Ralph F. Holmes, Esq.
    James P. Bassett, Esq.