**PRESTERA CENTER FOR MENTAL HEALTH SERVICES, INC., et al., Plaintiffs,**

v.

**Elizabeth S. LAWTON, et al., Defendants.**

**No. CIV.A. 2:00–0436.**

United States District Court, S.D. West Virginia. Charleston Division.

Sept. 12, 2000.

Charles M. Johnson, David R. Bungard, Robinson & McElwee, Charleston, WV, for Plaintiffs.

Darrell V. McGraw, Jr., Attorney General, Charlene A. Vaughan, Kimberly L. Stitzinger, Office of the Attorney General, Charleston, WV, for Defendants.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are Defendants' motion to dismiss for failure to state a claim and lack of federal jurisdiction and Plaintiffs' motion for preliminary injunction. The Court **GRANTS** in part and **DENIES** in part Defendants' motion to dismiss. Finding a federal question, the Court retains jurisdiction of this action. Plaintiffs' motion for preliminary injunctive relief is **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Allegations in the complaint are taken to be true for purposes of this motion. Plaintiffs are four comprehensive community mental health centers providing an array of mental health services to West Virginia

residents. Some of those services are reimbursed under the federal Medicaid [1] program. Defendants are the Commissioner of the West Virginia Bureau for Medical Services (BMS) and the Secretary of the West Virginia Department of Health and Human Resources (DHHR). BMS oversees, implements and regulates the Medicaid program in West Virginia; DHHR oversees BMS.

In May 1998 Health Care Financing Administration (HCFA), which oversees states' participation in Medicaid, reviewed six West Virginia behavioral health centers (only one of which is a Plaintiff here). (*See* Pls.' Mot. for Prelim. Injunctive Relief, Ex. I at 3). HCFA initially deferred approximately $2.9 million based, in part, on a finding Defendants ineffectively monitored claims for rehabilitation services.[2] In response, Defendants increased audits of behavioral health providers regarding rehabilitation services. (*See* Mem. of Law in Opp'n to Pls.' Mot. for Prelim. Injunctive Relief, Ex. 3, attachment 1.) Defendants also agreed to implement certain changes to the Behavioral Health Rehabilitation Services Manual (the Manual). (*See id.*)[3]

As part of the promised audit program, between July of 1998 and October of 1999,

Defendants' Office of Surveillance and Utilization Review (SUR) audited each of Plaintiffs' facilities. SUR reviewed claims for basic living skills and day treatment services, but according to the Complaint, refused to provide review criteria or an exit interview.[4] Following a draft audit in which on average 91% of the facilities' claims for these services were denied, Plaintiffs requested clarification of documentation standards for these services and an administrative review hearing for clarification. Defendants refused these requests. Final audits affirmed the previous denials of reimbursement.

Plaintiffs allege Defendants have failed and refused 1) to properly implement program regulations to define what portion of the Medicaid eligible population can access basic living skills and other rehabilitation services and 2) to provide adequate clarification of these program and documentation requirements.[5]

Plaintiffs' claims are brought under 42 U.S.C. § 1983, alleging violations of the Medicare Act, its regulations, and state regulations; under the United States Constitution, alleging denial of equal protection and procedural and substantive due process guarantees; and under the Plaintiffs' provider agreement with Defendants.[6] Defendants moved to dismiss ar-

---

1. Title XIX of the Social Security Act, commonly known as the Medicaid Act, is codified at 42 U.S.C. §§ 1396–1396v.

2. HCFA cited "numerous examples of claims that did not appear to be supported by documentation," including:
 — Treatment plans missing or not covering all dates of services billed.
 — Treatment plans that did not cover all services billed.
 — Individuals receiving basic living skills 6 hours per day 5 days per week at day treatment facilities. Basic living skills do not qualify as rehabilitative services.
 — Numerous instances of mentally retarded individuals receiving rehab services, often for a period of several years.
 — Individuals who received the same service (e.g. laundry) as both personal care and basic living skills.
 (Mem. of Law in Opp'n to Pls.' Mot. for Prelim. Injunctive Relief, Ex. 3.)

3. In October 1998 Defendants proposed changes to the Manual intended in part to address the HCFA findings and the disallowance for rehabilitation services. (*Id.*) Although Plaintiffs allege Defendants failed to give proper notice of these changes, they also aver the Circuit Court of Kanawha County enjoined implementation of the changes in December 1998. (Compl.¶¶ 50, 51.) Thus, there is no allegation Defendants implemented changes without proper notice.

4. No authority is cited requiring either.

5. The complaint does not allege the state plan fails to comport with federal law nor that state officials are failing to abide by the state plan.

6. *Count* I requests injunctive relief based on federal statutes and regulations, state regulations, procedural and substantive due process; *Counts* II and VI allege violations of

guing Plaintiffs have no private right of action under the Medicaid Act and its regulations and have failed to state a claim, pursuant to *Rule* 12(b)(6), under either the Medicaid Act or the Constitution. Therefore, they urge, this Court lacks federal jurisdiction.

## II. DISCUSSION

### A. *Motion to Dismiss*

#### 1. 12(b)(6) Standard

Our Court of Appeals has often stated the settled standard governing the disposition of a motion to dismiss pursuant to *Rule* 12(b)(6), *Federal Rules of Civil Procedure:*

> In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.

*Mylan Laboratories, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993) (citations omitted); *see also Brooks v. City of Winston–Salem,* 85 F.3d 178, 181 (4th Cir. 1996); *Gardner v. E.I. Dupont De Nemours and Co.,* 939 F.Supp. 471, 475 (S.D.W.Va.1996). It is through this analytical prism the Court evaluates Defendants' motion.

#### 2. Medicaid

"Medicaid is a cooperative federal-state program through which the federal government provides financial assistance to states so that they may furnish medical care to needy individuals." *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 502, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). States need not participate, but if they do they must comply with requirements imposed by the Act and regulations promulgated by the Secretary of Health and Human Services. To qualify for federal assistance, a State must submit to the Secretary and have approved a "plan for medical assistance," § 1396a(a), that contains a comprehensive statement describing the nature and scope of the State's Medicaid program. 42 C.F.R. § 430.10 (1999). Failure to conform a state plan to federal requirements or to administer the plan in conformity with them may result in a loss of federal funds for the program. *See* 42 U.S.C. § 1396c.

#### 3. Enforcement of federal statutes under 42 U.S.C. § 1983

Section 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Under Section 1983 there is a cause of action for violations of federal statutes as well as the Constitution because § 1983 safeguards certain rights conferred by federal statutes. *Blessing v. Freestone,* 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) (citing *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980)). Thus, to seek redress under § 1983, a plaintiff must assert the violation of a federal right, not merely a violation of federal law. *Id.*

To determine whether a particular statutory provision gives rise to a federal right, a court employs a three-part test. The first consideration is whether Congress intended the provision in question to benefit the plaintiff. *Blessing,* 520 U.S. at 340, 117 S.Ct. 1353 (quoting *Wright v. Roanoke Redevelopment and Hous. Auth.,* 479 U.S. 418, 430, 107 S.Ct. 766, 93

---

procedural due process; *Count* III alleges a deprivation of substantive due process rights; *Count* IV seeks to enforce rights to equal protection allegedly guaranteed by federal statute and regulation; *Count* V alleges deprivation of constitutional equal protection guar-

antees; and *Count* VIII requests declaratory judgment as to rights under agreements. There is no *Count* VII. *Count* XIX although titled "Claims against [DHHR]" actually simply identifies Defendant Ohl and her relation to BMS.

L.Ed.2d 781 (1987)). Congressional intent is the "key to the inquiry" of whether a statute creates enforceable rights. *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). In determining Congress' intent, one looks to the language of the statute. *See Wright*, 479 U.S. at 430, 107 S.Ct. 766. Second, the plaintiff must demonstrate the right assertedly protected is not so "vague and amorphous" that its enforcement would strain judicial competence. *Id.* (quoting *Wright*, 479 U.S. at 431–32, 107 S.Ct. 766.) Third, the statute unambiguously must impose a binding obligation on the States. "The provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms." *Id.* (citing *Wilder*, 496 U.S. at 510–11, 110 S.Ct. 2510).[7]

■ In applying the test, courts must identify with particularity the rights claimed under a specific statutory provision. *See id.* at 342–43, 117 S.Ct. 1353. "Only when a complaint is broken down into manageable analytic bites can a court ascertain whether each separate claim satisfies the various criteria … for determining whether a federal statute creates rights." *Id.* at 342, 117 S.Ct. 1353. Courts must also analyze the statutory provisions in detail, in light of the entire legislative enactment, to determine whether language in question creates enforceable rights. *See Suter v. Artist M.*, 503 U.S. 347, 357, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992).

**7.** If a plaintiff demonstrates a federal statute creates an individual right, there is a rebuttable presumption that the right is enforceable under § 1983, which may be overcome if Congress "specifically foreclosed a right under § 1983." *Id.* (quoting *Smith v. Robinson*, 468 U.S. 992, 1005 n. 9, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). Congress did not foreclose enforcement of the Medicaid Act under § 1983. *See Wilder*, 496 U.S. at 520, 110 S.Ct. 2510.

**8.** Several courts have found a § 1983–enforceable right for health care providers under the second (not underlined) portion of

Under Section 1983, Plaintiffs seek to enforce §§ 1396a(a)(30)(A) (Section 30(A)) and 1396a(a)(17) (Section (a)17) of the Medicaid Act against alleged violation by Defendants. The Court considers the statutes *seriatim*.

### a. Section 1396a(a)(30)(A)

The first Medicaid statute under which Plaintiffs claim § 1983–enforceable rights is Section 30(A), which requires:

*A state plan for medical assistance must—*

*provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan … as may be necessary to safeguard against unnecessary utilization of such care and services* and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area[.]

42 U.S.C. § 1396a(a)(30)(A). Plaintiffs contend only the underlined portion of the statute—the "unnecessary utilization" provision—forms the basis of their challenge.[8] (*See* Plfs.' Mem. in Opp'n to Defs.' Mot. to Dismiss at 5.) They further assert "this case does not involve any challenges to the specific Medicaid reimbursement rates which the defendants pay for rehabilitative services." (*Id.*)

Section 30(A), based on claims of arbitrary and capricious rate-setting or improper rate changes. *See Orthopaedic Hosp. v. Belshe*, 103 F.3d 1491, 1495 (9th Cir.1997); *Minnesota HomeCare Ass'n Inc. v. Gomez*, 108 F.3d 917, 918 (8th Cir.1997); *Methodist Hospitals, Inc. v. Sullivan*, 91 F.3d 1026, 1029 (7th Cir. 1996); *Arkansas Medical Soc'y, Inc. v. Reynolds*, 6 F.3d 519, 530 (8th Cir.1993). Notably, these cases all pre-date Congress's repeal of the Boren amendment, 1396a(a)(13)(A) that previously required states to set reimbursement rates which are "reasonable and adequate." *See infra* at 775–76.

Facially, the statute appears to benefit the general public and the public fisc, protecting against unnecessary (and possibly, fraudulent) expenditures, safeguarding "against unnecessary utilization of such care and services." Plaintiffs, however, contend they are also an intended beneficiary of the underlined statutory language. They argue providers are the ones who must know what the standards and procedures are that they must follow to provide services and be reimbursed for it. (Pls.' Mem. in Opp'n at 13.) In particular, they assert a right to require the state to follow duly promulgated documentation standards during an audit process. (*Id.*)

No court has found such an enforceable right under 30(A). Defendants rely on a series of decisions finding providers to be beneficiaries of the rate-setting payment provisions of 30(A).[9] Plaintiffs do not rely on this portion of 30(A), however, and as noted above, the Court must consider the specific statutory language that ostensibly creates the right asserted. Cases that have found § 1983 enforceable rights for Medicaid *beneficiaries* are clearly inapposite, for the test requires the Court find the statute benefits Plaintiffs, i.e., providers.

Plaintiffs propose the instant action asserts statutory violations identical to those found by this Court in *Pressley Ridge Schools, Inc. v. Stottlemyer*, 947 F.Supp. 929 (S.D.W.Va.1996). In *Pressley Ridge*, the Court relied on *Wilder* to find a § 1983 enforceable statutory right to reasonable reimbursement through the Medicaid program for providers of health care services. *See Pressley Ridge*, 947 F.Supp. at 938.

In *Wilder* the Supreme Court held the Boren Amendment, 42 U.S.C. § 1396a(a)(13)(A)(repealed 1997), created a substantive federal right enforceable by health care providers under § 1983 to "adequate and reasonable" rates of reimbursement. *Wilder*, 496 U.S. at 512, 110 S.Ct. 2510. In the Balanced Budget Act of 1997, Congress repealed the Boren Amendment for services rendered on or after October 1, 1997 and replaced it with a section requiring public input for rate setting. Balanced Budget Act of 1997, Pub.L. No. 105–33 § 4711(a)(1), 111 Stat. 251, 507–08 (1997) (codified at 42 U.S.C. § 1396a(a)(13)).[10]

Additionally, analysis of statutes creating rights enforceable under § 1983 must focus on well-defined claims and specific statutory provisions. *Blessing*, 520 U.S. at 342, 117 S.Ct. 1353. As subsequent cases have established clearly, a finding that a statute generally creates enforceable rights "paints with too broad a brush." *See id.* While this Court in *Pressley Ridge*, having assumed jurisdiction under *Wilder* and the Boren Amendment, then found a violation of Section 30(A), that finding is no precedent for Defendants' claim of an enforceable right under Section 30(A). Further, reasonable rates of reimbursement, previously required by the Boren Amendment, are not at issue here. Accordingly, *Pressley Ridge* does not support Defendants' claim.

■ The Court returns to this issue of first impression, whether the "unnecessary utilization" subsection of the Medicaid Act

---

**9.** See *supra* n. 7. Plaintiffs also proffer *Value Behavioral Health v. Ohio Dep't of Mental Health*, 966 F.Supp. 557 (S.D.Ohio 1997) for several propositions of law; however, that judgment was vacated and its appeal dismissed by the appeals court in 1998.

**10.** The legislative history supports the conclusion Congress intended to preclude a right of action under § 1983 for health care providers based on the adequacy of state's rates. "It is the Committee's intention that, following enactment of this Act, neither this nor any other provision of Section 1902 [42 U.S.C. § 1396] will be interpreted as establishing a cause of action for hospitals and nursing facilities relative to the adequacy of the rates they receive." H.R.Rep. No. 105–149, at 1230 (1997). *See also HCMF Corp. v. Gilmore*, 26 F.Supp.2d 873, 880 (W.D.Va.1998) ("With the repeal of the Boren Amendment nothing remains that remotely resembles a federal right to reasonable and adequate rates.")

creates an enforceable right in health care providers:

> A state plan for medical assistance must—
>
> provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan ... as may be necessary to safeguard against unnecessary utilization of such care and services[.]

42 U.S.C. § 1396a(a)(30)(A). As noted, the first factor is whether Congress has "intended that the provision in question benefit the plaintiff." *Blessing,* 520 U.S. at 340, 117 S.Ct. 1353. The plain language of the statute clearly shows it is meant to benefit the general public. Plaintiffs argue that providers are also intended beneficiaries because they must know the standards and procedures that they must follow to be reimbursed for the services they provide. (Pls.' Mem. in Opp'n at 13.) In particular, they assert a right to require the state to follow duly promulgated documentation standards during an audit process. (*Id.*)

While service providers potentially may benefit from the existence of the required methods and procedures, this does not demonstrate providers are *intended* beneficiaries, as the test requires. The legislative history of the provision bears this out. According to Senator Ribicoff, sponsor of the legislation, the "unnecessary utilization" provision

> is designed to assure that unnecessary services are eliminated. There have been a number of allegations that unnecessary services are being provided and that some charges have been made which are exorbitant. [This provision] will give the States the explicit responsi-

bility of instituting the necessary methods and procedures to prevent these undesirable practices. Among the steps which they could take would be periodic review of utilization and charges of specific providers of service....

113 Cong. Rec. 33529–30 (1967) (statement of Senator Ribicoff). The "unnecessary utilization" provision is intended, as appears on its face, to contain costs and guard against fraud.[11]

The unnecessary utilization provision also fails tests two and three. Test two asks whether the provision is sufficiently "vague and amorphous" that "its enforcement would strain judicial competence." *Blessing,* 520 U.S. at 339, 117 S.Ct. 1353. Methods and procedures in the state plan are to be judged by whether they are "necessary to safeguard against unnecessary utilization." This is not a judicial standard (unlike reasonableness standards previously found to pass the non-vague test). Courts would be required to decide what regulations are necessary to do the job, either by writing the standards, clearly a legislative or administrative task, or by reviewing every proposed regulation. Federal courts are not equipped for such undertakings and separation of powers concerns are implicated also.

The third test asks whether the statute unambiguously imposes a binding obligation on the states. In 30(A) the State is bound to have a plan: ("A state plan must provide such methods and procedures ...."). But the statute itself does not provide "notice to the States that failure to do anything other than submit a plan with the requisite features, to be approved by the Secretary, is a further condition on the receipt of funds from the Federal Govern-

---

11. Compare, also, cases where courts have found Congressional intent to benefit a plaintiff in a statute: all cite clear and plain language in support of the finding. *Doe v. Chiles,* 136 F.3d at 715 ("The plain language of [section 1369a(a)(8)'s] reasonable promptness clause is clearly intended to benefit Medicaid [recipients.]"); *Wilder,* 496 U.S. at 510, 110 S.Ct. 2510 ("There can be little doubt that health care providers are the intended beneficiaries of the Boren Amendment.... [the provision] is phrased in terms of benefitting health care providers...."); *Wright,* 479 U.S. at 430, 107 S.Ct. 766 ("The Brooke Amendment [to the Housing Act of 1937] could not be clearer ... The intent to benefit tenants is undeniable.").

ment." *Suter*, 503 U.S. at 362, 112 S.Ct. 1360 (finding that Adoption Assistance and Child Welfare Act creates no right enforceable under § 1983).

Accordingly, the Court **FINDS** and **CONCLUDES** Section 30(A) creates no rights enforceable under § 1983.

### b. Section 1396a(a)(17)

The second Medicaid statute under which Plaintiffs claim § 1983–enforceable rights is Section (a)17, which requires a state plan to "include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan[,]" taking into account the income and resources of recipients, "which are consistent with the objectives of [Title XIX.]" 42 U.S.C. § 1396a(a)(17). A straightforward reading of this language shows it governs the income calculations States use to determine whether an individual is eligible for Medicaid services. *See Mitchell v. Lipscomb*, 851 F.2d 734, 735 (4th Cir.1988) ("The standards used in determining Medicaid eligibility are set forth in 42 U.S.C. § 1396a(a)(17)."). The section also provides a State can choose in its state plan whether or not to cover a particular medical procedure for Medicaid recipients, so long as the choice is reasonable. Section (a)17 "confers broad discretion on the States to adopt standards for determining the extent of Medicaid coverage." *Beal v. Doe*, 432 U.S. 438, 444, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977) (holding a State's refusal to extend Medicaid coverage to nontherapeutic abortions is not inconsistent with the Medicaid Act).

No court has found Section (a)17 provides an enforceable right of action for Medicaid providers. Plaintiffs rely on a case where a district court held a Medicaid recipient was entitled to sex reassignment surgery under (a)17. *See Smith v. Palm-*

er, 24 F.Supp.2d 955 (N.D.Iowa 1998). Plaintiffs, however are Medicaid providers, not beneficiaries. To prove they have a statutory right enforceable under § 1983, Plaintiffs must demonstrate they, as providers, are the intended beneficiaries of the right they identify.

On the face of (a)17, the direct beneficiaries of this statute are Medicaid recipients and, again, the general public and the public fisc. One might extrapolate an indirect benefit to providers, for example, as increasing the numbers of those receiving their services and by providing standards to guide providers in determining recipient eligibility. However, nothing in the provision suggests Congress *intended* it to benefit providers. Judging by the clear and plain language test, *see supra* n. 8, Section (a)17 is not intended to provide a statutory right for Medicaid providers, enforceable through Section 1983.

Further, the right Plaintiffs identify as enforceable through (a)17 is the right to have the State "equally apply the criteria for reviewing claims for rehabilitation services." (Compl.¶ 211.) Section (a)17 provides standards for individual Medicaid eligibility and medical procedures that Medicaid covers. Section (a)17 simply does not address the standards for State audits of provider services. The Court FINDS and CONCLUDES 42 U.S.C. § 1396a(a)17 is not a statute Plaintiffs have a right to enforce under 42 U.S.C. § 1983.

### 4. Enforcement of Federal Regulations via Section 1983

Plaintiffs also propose to enforce regulations promulgated pursuant to the Medicaid Act, 42 C.F.R. § 447.205 and 456.3.[12] Our Court of Appeals has held

---

12. Section 447.205 provides for public notice of changes in statewide methods and standards for setting payment rates. As noted, Plaintiffs assert this case does not involve reasonable rates for Medicaid services. See *supra* at II.B.1. Section 456.3 implements,

*inter alia*, Section 30(A), providing for a statewide surveillance and utilization control program that safeguards against unnecessary or inappropriate use of Medicaid services and against excess payments. This is the program under which Plaintiffs were audited.

"an administrative regulation … cannot create an enforceable § 1983 interest not already implicit in the enforcing statute." *Smith v. Kirk,* 821 F.2d 980, 983 (4th Cir.1987). The appeals court noted the Supreme Court has never held a regulation could do so—"to the contrary, members of the Court have expressed doubt that 'administrative regulations alone could create such a right.'" *Id.* (quoting *Wright,* 479 U.S. at 432, 107 S.Ct. 766 (O'Connor, J., dissenting)). Accordingly, the Court **FINDS** and **CONCLUDES** Plaintiffs cannot enforce these Medicaid regulations via Section 1983.

### 5. Equal Protection Claims

▆▆ The Fourteenth Amendment to the United States Constitution provides no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., Amend. XIV, § 1. In *Count* V Plaintiffs allege Defendants have failed to apply the Rehabilitation Manual and program instructions equally to all providers. However, the factual allegations of the Complaint belie this assertion. Plaintiffs' descriptions of Defendants' actions toward Plaintiffs Prestera, Seneca, Valley, and Westbrook are word-for-word identical with the exception of dates and dollar amounts. (*See* Compl. ¶¶ 56–154.) There is no allegation Plaintiffs are a protected class. Nor do Plaintiffs allege that any other provider has been treated differently.

▆▆ When applying equal protection rational basis review, government action will not be overturned "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes" as to be "irrational." *Kimel v. Florida Bd. of Regents,* —— U.S. ——, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) (quoting *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979)). At a minimum, successful allegations of equal protection violations must assert some varying treatment of different groups. Accordingly,

*Count* V fails to state a claim and is DISMISSED.

### 6. Substantive Due Process Claims

In *Count* III Plaintiffs claim Defendants violated their rights to substantive due process by failing and refusing to implement appropriate program regulations defining "rehabilitative potential" or clarifying what particular clients are eligible to receive rehabilitation, but thereafter denying providers' claims for offering these services.

▆▆ Under the Fourteenth Amendment "[n]o State shall … deprive any person of life, liberty, or property, without due process of law." U.S. Const., Amend. XIV, § 1. The Supreme Court has held the amendment to cover a substantive sphere as well, "barring certain government actions regardless of the fairness of the procedures used to implement them." *County of Sacramento v. Lewis,* 523 U.S. 833, 840, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (citations omitted). To violate substantive due process, an executive act must be "fatally arbitrary." *Id.* at 841, 118 S.Ct. 1708. The substantive component of the Due Process Clause is violated by executive action only when it "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Id.* at 847, 118 S.Ct. 1708. Conduct deliberately intended to injure in some way, unjustifiable by any government interest, is the sort of official action most likely to rise to the conscience-shocking level. *Id.* at 849, 118 S.Ct. 1708.

▆▆ This Court need not consider the conscience-shocking power of Defendants' alleged actions, however, because the Supreme Court instructs that "[w]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide in analyzing these claims." *Id.* at 842, 118 S.Ct. 1708 (cita-

tions omitted). In the instant case, Plaintiffs do not allege deliberate, outrageous, or egregious activities by Defendants, but, at best—or worst—arbitrary deprivation of claimed property rights, a deprivation fully covered by the Due Process Clause itself. Accordingly, Plaintiffs' claims for violation of substantive due process under *Count* III are **DISMISSED**.

### 7. Procedural Due Process Claims

*Count* II alleges Defendants violated Plaintiffs' constitutional rights to procedural due process by failing to clarify regulations applied in SUR review audits of their provision of rehabilitation services that resulted in denial of substantial payments (91 percent of claims). *Count* VI charges Defendants have demanded repayments of disputed amounts even though providers are contesting the denials in an administrative hearing.

■ As noted, the Fourteenth Amendment provides no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const., Amend. XIV, § 1. Property interests, of course, are not created by the Constitution. "Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In this case, Plaintiffs allege they are rightfully entitled to reimbursement for services provided the State Defendants for rehabilitation services.

■ Procedural due process imposes certain constraints "before an individual is finally deprived of a property interest." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Property interests are constitutionally protected where an individual has a "legitimate claim of entitlement to it." *Roth*, 408 U.S. at

577, 92 S.Ct. 2701. Although "due process is flexible and calls for such procedural protections as the particular situation demands," *Mathews*, 424 U.S. at 334, 96 S.Ct. 893, the "essential requirements of due process ... are notice and an opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The "fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews*, 424 U.S. at 333, 96 S.Ct. 893 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)).

■ In *Pressley Ridge*, this Court found Defendants acted arbitrarily and capriciously by ignoring provisions of the Medicaid Provider Manual and developing a new standard, which was applied only to Pressley Ridge. *See Pressley Ridge*, 947 F.Supp. at 940. "At a minimum," this Court held, " 'due process requires that government officials refrain from acting in an irrational, arbitrary or capricious manner.' " *Id.* (citing *Pollnow v. Glennon*, 757 F.2d 496, 501 (2nd Cir. 1985)). "Due process further requires that decisions regarding entitlements to government benefits must be made according to 'ascertainable standards' that are applied in a rational and consistent manner." *Id.* (citing *Holmes v. New York City Housing Auth.*, 398 F.2d 262, 265 (2nd Cir.1968)).

■ Plaintiffs allege Defendants have failed or refused 1) to promulgate standards and regulations to define what portion of the Medicaid eligible population can access basic living skills and other rehabilitation services, 2) to provide adequate clarification of the rehabilitation services program and its documentation requirements, 3) to provide prior notice of altered standards of review applied during audits, and 4) to complete the hearing process before demanding repayment. These allegations are sufficient to state a claim for due pro-

cess violations.[13] Defendants' motion to dismiss Plaintiffs' due process claims of *Counts* II and VI is **DENIED**.

### 8. Abstention and Federal Jurisdiction

 Defendants propose this Court should abstain from entertaining this action either under *Younger*[14] or *Colorado River*[15] abstention doctrines. Under either doctrine, a Court may abstain where a parallel state action pends. Because state administrative hearings are incomplete, Defendants urge abstention. The due process violations Plaintiffs allege, however, underpin and are collateral to the administrative hearings, which cannot and will not address the putative constitutional violations. As the Supreme Court explained, *Younger* abstention is appropriate only when there is "an adequate opportunity in the state proceedings to raise constitutional challenges." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). Accordingly, the Court declines abstention.

Finally, because *Counts* II and VI state claims arising under the Constitution, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331. Pursuant to 28 U.S.C. § 1367, the Court exercises supplemental jurisdiction over *Count* VIII, requesting a declaratory judgment as to Plaintiffs' rights under their agreements with Defendants.

### B. Motion for Preliminary Injunction

Having reviewed and narrowed Plaintiffs' Complaint to claims for procedural due process and a contract claim, the Court now considers the preliminary injunctive relief sought.

### 1. Preliminary Injunction Standard

 The Court applies a balancing test to determine whether a preliminary injunction is properly granted. *See Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir.1977). The sequential application of the *Blackwelder* factors was discussed most recently in *Steakhouse, Inc. v. City of Raleigh, North Carolina*:

> In deciding whether to grant a preliminary injunction, the district court is to consider three factors. First, it must balance the likelihood of irreparable harm to the plaintiff if the injunction is refused against the likelihood of irreparable harm to the defendant if it is granted. Second, the court should consider the likelihood that the plaintiff will succeed on the merits. The more the balance of harms leans away from the plaintiff, the stronger his showing on the merits must be. Finally, the court must consider the public interest.

166 F.3d 634, 637 (4th Cir.1999)(citing *Blackwelder*). The plaintiff bears the burden of proving the factors favor the grant of an injunction. *See Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir.1997).

 In applying the balancing test, the most important factors are the two factors regarding the balancing of harms. *Id.* A plaintiff must demonstrate harm that is "'neither remote nor speculative, but actual and imminent.'" *Id.* (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2nd Cir.1989)). If, after balancing the harm to the plaintiffs if the injunction were not granted against the harm to the defendants if the injunction were granted,

> the balance 'tips decidedly' in favor of the plaintiff, a preliminary injunction

---

**13.** Defendants' arguments concerning the truth of these allegations will be appropriate at summary judgment or at the trial of this matter; however, they involve analysis of documents and questions of fact not properly before the Court today.

**14.** *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

**15.** *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483, *reh'g denied*, 426 U.S. 912, 96 S.Ct. 2239, 48 L.Ed.2d 839 (1976).

will be granted if 'the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation.' As the balance tips away from the plaintiff, a stronger showing on the merits is required.

*Id.* (citations omitted).

■■■ Finally, the Court notes that " '[T]he grant of interim relief [is] an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in [the] limited circumstances which clearly demand it.' " *Steakhouse,* 166 F.3d at 637 (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.,* 952 F.2d 802, 811 (4th Cir.1991)).

### 2. Application of the Standard

Plaintiffs' motion for preliminary injunction requests two forms of relief:[16] (1) enjoin Defendants' utilization reviews of claims for rehabilitation services during the course of litigation, and (2) enjoin Defendants from recouping alleged overpayments from Plaintiff Valley Comprehensive Community Mental Health Center (Valley).[17]

### a. Injunction of rehabilitation services utilization reviews

Plaintiffs identify the potential harms of enjoining utilization reviews to be financial

jeopardy, loss of experienced staff and downsizing of rehabilitation service programs that they provide. Defendants counter they will be harmed because the very statute Plaintiffs seek to enforce, 42 U.S.C. § 1396a(a)(30)(A), requires Defendants to develop methods and procedures for utilization and payment for services to safeguard against unnecessary utilization. The purpose is to prevent improper billings that deplete scarce Medicaid resources, a process Plaintiffs seek to halt. Additionally, Defendants point out that where "services" provided are not those permitted to be reimbursed under law and regulation, the loss of those services is not necessarily a loss of benefits to the client population.

■■■ Ordinarily, when assessing irreparable injury in the absence of a preliminary injunction, the loss of money alone is insufficient because an award of money damages will repair the damage. The Eleventh Amendment, however, bars a court from assessing monetary damages against the State. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Therefore, our Court of Appeals has held the inability to obtain damages from the State reduces the showing necessary to establish irreparable harm. *Rum Creek Coal Sales, Inc. v. Caperton,* 926 F.2d 353 (1991).

---

**16.** The Complaint lists ten types of injunctive relief, which the Court summarizes: Defendants be enjoined from (1) any further audits of Plaintiffs' records until they promulgate appropriate, ascertainable program regulations concerning basic living skills and other rehabilitative services; (2) any further utilization of the current review criteria used by the SUR team in their audits of Plaintiffs' records; (3) any denial of rehabilitative services based on the SUR team's review criteria rather than the Rehabilitation Manual; (4) recoupment of monies from Plaintiffs for the contested audits. Plaintiffs request Defendants be ordered to (5) develop appropriate audit procedures and (6) promulgate appropriate, ascertainable program regulations concerning documentation standards for rehabilitative services. This Memorandum

Opinion and Order focuses only on the two forms of injunctive relief sought in Plaintiffs' motion.

**17.** Defendants are currently withholding twenty-seven thousand seven hundred seven dollars ($27,707.00) each month from Valley's payments for services rendered to recoup three hundred seventeen thousand two hundred forty-eight dollars and twenty-five cents ($317,248.25), the initial disallowance plus interest. The overpayment now totals three hundred sixty-one thousand, six hundred thirteen dollars and fifty cents ($361,613.50). (Pls.' Mem. in Reply to Defs.' Mem. in Opp'n to Pls.' Mot. for Prelim. Injunctive Relief, Ex. F.)

Plaintiffs, however, must demonstrate some irreparable harm. The Medicaid regulations provide for an administrative review procedure, an informal conference to allow a provider to produce additional information bearing on an adverse administrative action. (*See* Defs.' Mem. of Law in Opp'n to Pls.' Mot. for Prelim. Injunctive Relief, Ex. 32, Medicaid Regulations, § 751.) Issues presented by the provider in the administrative review on which the provider receives an adverse ruling may be presented at a formal evidentiary hearing before the Commissioner of the Bureau for Medical Services or a designee. (*See id.*, Medicaid Regulations, § 753.) West Virginia evidentiary rules applicable to administrative hearings govern; a provider may present evidence and argument and cross examine adverse witnesses. Plaintiffs make no allegations these procedures are inadequate or fail to satisfy due process requirements. Through these procedures, erroneous determinations may be corrected. Our Court of Appeals has held there is no requirement for exhaustion of state administrative remedies in Medicaid suits brought under § 1983. *See Talbot v. Lucy Corr Nursing Home*, 118 F.3d 215, 220 (4th Cir.1997). Nevertheless, the Court is reluctant to enjoin the administrative audit process based on procedural due process allegations, where Plaintiffs have failed to avail themselves of the curative process available.[18] Considering the balancing of *Blackwelder* factors, the result does not tip definitely in favor of either party.

Relief on the merits is similarly problematic at this juncture. While Plaintiffs allege Defendants altered review standards for documentation of rehabilitative services, Defendants have put forward a substantial packet of standards from the DHHR Regulations, Medicaid manual requirements, and Procedure Code descriptions on which reviewers ostensibly relied. (*See* Defs.' Mem. of Law in Opp'n to Pls.' Mot. for Prelim. Injunctive Relief, Ex. 34.) None of these standards were altered since their initial promulgation, which was accomplished prior to the audits in question. The relevant question whether reviewers altered the standards in their application entails factual questions requiring discovery, which the course of this litigation will provide.

Finally, the public interest dictates the Defendants' carry out the audits and continue the oversight process. As noted previously, the Medicaid statutes and regulations at issue clearly were intended by Congress to benefit the public, prevent fraud, and provide for efficient use of public resources. The public interest is best served by observing the audit process. Accordingly, the Court **DENIES** Plaintiffs' motion for a preliminary injunction to halt surveillance reviews of rehabilitation services during the pendency of this litigation.

### b. Injunction of recoupment of Valley overpayment

Defendants have agreed to issue a stay of the recoupment of Valley's overpayment of three hundred sixty-one thousand, six hundred thirteen dollars and fifty cents ($361,613.50) to begin the day after Valley's evidentiary hearing is concluded, to abate until a decision and order are entered in the instant action. (*See* Pls. Mem. in Reply to Defs.' Mem. in Opp'n to Pls.' Mot for Prelim. Injunctive Relief, Ex. F.) The stay thus recognizes both the importance of the ongoing administrative process and the need to determine procedural due process issues raised here. The stay also accords the relief sought and thus moots the necessity of an injunction. Consequently, the Court **DENIES** Plaintiffs' motion for preliminary injunction on recoupment of the Valley overpayment.

---

18. In the matter of Valley, an administrative review hearing was held December 2, 1999. The administrative review decision upholding the findings of the SUR review was issued February 7, 2000. An evidentiary hearing has not been held. In the case of the remaining providers, administrative hearings have not been held.

## III. CONCLUSION

### A. Motion to Dismiss

*Count* I is **DISMISSED,** except insofar as it alleges procedural due process violations. *Counts* III, IV, and v. are **DISMISSED.** *Count* IX is **DISMISSED** and its statements reassigned as identification of the parties following ¶ 7 of the Complaint. There is no *Count* VII. *Counts* II, VI, alleging procedural due process claims, and *Count* VIII requesting declaratory judgment as to the parties' contractual rights, remain. To summarize, Defendants' motion to dismiss *Counts* I (except procedural due process), III, IV, V, VII and IX is **GRANTED;** their motion to dismiss *Counts* II, VI, and VIII is **DENIED.**

### B. Motion for Preliminary Injunction

Plaintiffs' motions for preliminary injunctive relief regarding audits of rehabilitative service providers and recoupment of alleged overpayment from Valley are **DENIED.**