Bryson v. Shumway, et al.          CV-99-558-M     10/23/01

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Bonnie Bryson and Claire
Shepardson, on behalf of
themselves and all others
similarly situated,
        Plaintiffs

        v.                                    Civil No. 99-558-M
                                              Class Action
                                              Opinion No. 2001 DNH 194

Donald Shumway, in his capacity
as Commissioner of the State of
New Hampshire Department of Health
and Human Services; and Susan Fox,
in her capacity as Director of the
State of New Hampshire Division of
Developmental Services,
        Defendants


**O R D E R**


Plaintiffs in this action represent themselves and a class

of persons who: (1) have acquired brain disorders (ABDs); (2)

have requested home and community-based care ("HCBC") services

from the State of New Hampshire's Medicaid program; (3) are

eligible for services funded by Medicaid; (4) are on a waiting

list for HCBC services; and (5) have been, or are likely to be,

placed in nursing homes or other institutions due to a lack of available HCBC services. Defendant Susan Fox is Director of the Division of Developmental Services ("DDS"), a unit of the New Hampshire Department of Health and Human Services ("HHS"), of which Defendant Shumway is Commissioner. DDS, under the oversight of HHS, administers the portion of the State's Medicaid program that provides reimbursement for services to persons, such as the class of plaintiffs, who have ABDs.

In this seven-count action for declaratory and injunctive relief, brought under 42 U.S.C. § 1983, plaintiffs seek to vindicate the right of the class they represent under: (1) 42 U.S.C. § 1396a et seq. (the Medicaid Act) and associated regulations; (2) 42 U.S.C. § 12132 et seq. (the Americans with Disabilities Act or "ADA"); (3) 29 U.S.C. § 794 (section 504 of the Rehabilitation Act of 1973 or "section 504"); and (4) the due process clause of the United States Constitution. Counts I, II, and VII allege violations of plaintiffs' rights under the Medicaid Act. Counts III and IV are based upon the ADA and

section 504.  Counts V and VI allege violations of plaintiffs' due process rights.  In their prayers for relief, plaintiffs ask the court to order defendants to: (1) submit a plan for providing them, expeditiously, with ABD/HCBC services; (2) cease and desist from providing ABD/HCBC services in an untimely manner; (3) cease and desist from policies and practices that: (a) deny them services based upon the severity of their needs, and (b) provide them with inferior institutional services rather than more effective HCBC services; (4) cease and desist from providing them with services that curtail their freedom of movement and right to control their daily lives; (5) administer the ABD/HCBC program in accordance with reasonable written standards; and (6) provide class members with written notices of all decisions regarding their applications for the ABD/HCBC program that: (a) state the legal and factual basis for any such decision, and (b) inform them of their right to a hearing.

Before the court are: (1) defendants' motion for summary judgment on all counts (document no. 19), to which plaintiffs

3

object; and (2) plaintiffs' motion for partial summary judgment on Counts II, VI, and VII (document no. 20), to which defendants object. For the reasons stated below: (1) defendants' motion for summary judgment is granted as to Counts I and V, denied as to Counts II, III, IV and VII, and moot as to Count VI; and (2) plaintiffs' motion for summary judgment is granted as to Count VII, denied as to Count II, and moot as to Count VI. Accordingly, this case shall proceed to trial on Counts II, III, and IV.

### Standard of Review

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "To determine whether these criteria have been met, a court must pierce the boilerplate of the pleadings and carefully review the parties' submissions to ascertain whether they reveal a trialworthy issue as to any material fact." Perez v. Volvo Car Corp., 247 F.3d 303, 310 (1st Cir. 2001) (citing Grant's Dairy-

4

Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res., 232 F.3d 8, 14 (1st Cir. 2000)). A material fact is "a contested fact [that] has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001) (citing McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)). In defending against a motion for summary judgment, "[t]he non-movant may not rely on allegations in its pleadings, but must set forth specific facts indicating a genuine issue for trial." Geffon v. Micrion Corp., 249 F.3d 29, 34 (1st Cir. 2001) (citing Lucia v. Prospect St. High Income Portfolio, Inc., 36 F.3d 170, 174 (1st Cir. 1994)). When ruling upon a party's motion for summary judgment, the court must "scrutinize the summary judgment record 'in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'" Navarro, 261 F.3d at 94 (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)).

# Factual Background

The plaintiff class consists of persons with acquired brain disorders who qualify for Medicaid assistance. Acquired brain disorders are disruptions in brain function that are neither congenital nor caused by birth trauma, manifest prior to age sixty, and present "a severe and life-long disabling condition which significantly impairs a person's ability to function in society." N.H. CODE ADMIN. R. He-P 522.02(a). Key symptoms include a significant decline in cognitive functioning and/or a deterioration of behavior. Id.

The federal Medicaid program, as administered in New Hampshire by HHS, provides reimbursement for a variety of programs and services for persons with ABDs. Plaintiffs in this case are persons with ABDs who currently receive, or who are likely to receive, Medicaid funded services in nursing homes, psychiatric facilities, rehabilitation facilities, or other institutions. In addition to services provided in institutional settings, DDS also administers a program of home and community-

based services for persons with ABDs.  Many aspects of this program are actually carried out, under the direction of DDS, by a group of "area agencies."  Plaintiffs represent the class of persons who wish to receive ABD/HCBC services rather than institutional care and who are currently on a waiting list for those services.

The ABD/HCBC program is operated under a waiver granted to HHS/DDS by the Center for Medicare and Medicaid Services ("CMS") (formerly the Health Care Financing Administration or HCFA), pursuant to the provisions of 42 U.S.C. § 1396n(c).

> Waivers are intended to provide the flexibility needed to enable States to try new or different approaches to the efficient and cost-effective delivery of health care services, or to adapt their programs to the special needs of particular areas or groups of recipients.  Waivers allow exceptions to State plan requirements and permit a State to implement innovative programs or activities on a time-limited basis, and subject to specific safeguards for the protection of recipients and the program.

42 C.F.R. § 230.20.  Among other things, the waiver program: (1) allows a state to "include as [reimbursable] 'medical assistance'

. . . payment for part or all of the cost of home or community-based services . . .," 42 U.S.C. § 1396n(c)(1); and (2) waives certain requirements pertaining to statewideness, comparability, and income and resources that normally apply to state Medicaid programs, 42 U.S.C. § 1396n(c)(3). The waiver statute also requires that

> the State provide[] assurances satisfactory to the Secretary that –
>
> . . .
>
> > **(D)** under such waiver the average per capita expenditure estimated by the State in any fiscal year for medical assistance provided with respect to such individuals [as are served under the waiver program] does not exceed 100 percent of the average per capita expenditure that the State reasonably estimates would have been made in that fiscal year for expenditures under the State plan for such individuals if the waiver had not been granted.

42 U.S.C. § 1396n(c)(2)(D). To participate in the waiver program, a state applies to the Secretary of Health and Human Services for a certain number of waiver "slots," see 42 C.F.R. § 430.20(e), and "[t]he Secretary shall not limit to fewer than 200

8

the number of individuals in the State who may receive home and community-based services under a waiver under this subsection," 42 U.S.C. § 1396n(c)(10).

Defendants first applied for an ABD/HCBC waiver in 1993, to implement a three-year program that would serve fifteen, twenty-six, and thirty-seven individuals in its first, second, and third years. (Fox Aff., Ex. A.) After two amendments, New Hampshire now has a waiver program, up for renewal at the end of October 2001, that provided seventy-four slots for the year ending October 31, 1997, seventy-seven slots for the year ending October 31, 1998, eighty-one slots for the year ending October 31, 1999, eighty-five slots for the year ending October 31, 2000, and eighty-nine slots in the year ending October 31, 2001. (Fox Aff., Ex. B.) The waiver agreement between defendants and CMS (formerly HCFA) provides, inter alia:

14. The State will not refuse to offer home and community-based services to any recipient for whom it can reasonably be expected that the cost of home or community-based services furnished to that

9

recipient would exceed the cost of a level of care referred to in item 2 of this request.

New Hampshire offers community-based services on the basis that in the aggregate, and not on an individual basis, that community-based services will not cost more than SNF [Nursing Facility with Skilled Nursing Care or Specialized Rehabilitative Services] services.

15. The Medicaid agency provides the following assurances to HCFA:

. . .

d. The agency will provide an opportunity for a fair hearing, under 42 CFR Part 431, subpart E, to beneficiaries who are not given the choice of home or community-based services as an alternative to the SNF care indicated in item 2 of this request, or who are denied the service(s) of their choice or the provider(s) of their choice.

e. The average per capita expenditures under the waiver will not exceed 100 percent of the average per capita expenditures for the level(s) of care indicated in item 2 of this request under the State plan that would have been made in that fiscal year had the waiver not been granted.

f. The agency's actual total expenditures for home and community-based and other Medicaid services provided to individuals under the waiver will not, in any year of the waiver period, exceed the amount that would be incurred by Medicaid for these individuals in

10

the setting(s) indicated in item 2 of this request, in the absence of the waiver.

(Fox Aff., Ex. A.)

It is undisputed that, at any given time, some of the approved waiver slots have not been occupied. Currently, eighty-one of the eighty-nine approved slots are filled. For the fiscal year ending in October 2000, eighty-three of eighty-five slots were filled. (Fox Dep. ¶ 6.) During the three years before that, the figures appear to show, respectively, that: seventy-nine of eighty-one slots, seventy-six of seventy-seven slots, and sixty-eight of seventy-four slots were occupied. (Mem. in Supp. of Pls.' Mot. Partial Summ. J. at 7.)[1] There are, at present – as there have been throughout the history of the ABD/HCBC waiver

---

[1] While the parties seem to disagree, very slightly, as to the number of waiver slots that have been filled over the last five years, this particular fact is not critical to any part of the court's resolution of the questions before it and, as a result, the parties' slight disagreement is not a factual dispute that would preclude summary judgment. See Navarro, 261 F.3d at 93-94.

program – more persons eligible for the program than there are slots available under the waiver. (Fox Aff., Ex. C.)

According to HHS regulations, persons who are interested in obtaining ABD/HCBC waiver services apply to their local area agency. N.H. CODE ADMIN. R. He-M 522.04(b). The area agency, in turn, has twenty-one days to determine whether an applicant is eligible for the program, He-M 522.05(d), and "[u]pon determination of eligibility, an area agency shall convey to each applicant or guardian and the division a written decision on eligibility," He-M 522.05(k). However, if an applicant is determined eligible for ABD/HCBC waiver services which are not available at the time eligibility is determined, the following regulations apply:

> (a) If the recommendations are for services which are needed currently but are unavailable or will be needed sometime within one year, an area agency intake worker or other staff person shall place the individual's name on a waiting list.
>
> . . .

12

(c)    Individuals on waiting lists shall receive services when funding becomes available based on the following 2 levels of priority:

(1)    The first priority shall be any individual whose needs exist currently and who is at imminent risk of substantial physical or emotional harm or significant regression or who is inflicting or is at significant risk of inflicting substantial physical or emotional harm toward others, such as:

a.    An individual living with a caregiver who might no longer be able to continue in that capacity;

b.    An individual who is or is about to become homeless;

c.    An  individual whose medical or behavioral needs are creating significant stress on the family or in the current living situation;

d.    An individual at risk of involvement with the criminal justice system;

e.    An individual living in unsafe, unhealthy circumstances;

f.    An individual ready to be discharged from a psychiatric hospital, acute care facility, rehabilitation facility, nursing facility or jail who would be unable to live in the community without services;

g.    Any other individual who is determined by area agency staff to have similar service needs; and

13

(2) The second priority shall be any individual whose needs exist currently and which do not place him or her at imminent risk of substantial physical or emotional harm or significant regression, such as:

  a. An individual whose current placement is not the least restrictive;

  b. An individual whose current type or level of services does not provide the assistance and environment to meet all of his or her needs;

  c. An individual wishing to move from one region to another whose division-funded services are inadequate to cover the costs of services in the new region;

  d. An individual whose family resides in a region while the individual resides out of state and who is not currently receiving services from an area agency; or

  e. Any other individual who is determined by area agency staff to have similar service needs.

(d) The purchase, provision, or arrangement of services for all individuals on the waiting list shall be prioritized on the basis of the individuals' needs regardless of the dates of application.

. . .

(f) For an individual on a waiting list or projected service need list, the area agency shall:

14

(1) Inform the individual and guardian of the individual's status as determined under He-M 522.11 (c) and (e) above and notify them if any change in status occurs;

. . .

(3) Interview the individual or guardian in person or by telephone to determine if there has been a change in the service needs of the individual on a waiting list:

    a. At least quarterly for those individuals cited in He-M 522.11 (c) (1); or

    b. At least every 6 months for those individuals cited in He-M 522.11 (c) (2).

N.H. CODE ADMIN. R. He-M 522.11.

A person deemed eligible for ABD/HCBC services and placed on the waiting list is notified of his or her placement on the waiting list, but is not given the opportunity to request a hearing to contest either the decision to be placed on the waiting list rather than being provided with services immediately, or the assignment of a priority level. Some, but not all applicants placed on the waiting list are informed about

15

the mechanics of the waiting list.[2]  As of June 2001, there were forty-eight persons on the waiting list.  (Fox Aff. ¶ 19.)  At that point, the shortest length of time that a person had been on the waiting list was five months, while the longest was seven years.  (Pls.' Mem. in Supp. of Mot. Partial Summ. J., Ex. N.) The average time on the waiting list was two years and three months.  (Id.)

## Discussion

As noted above, defendants have moved for summary judgment on all seven counts of plaintiffs' amended complaint while

---

[2] The content of the notification letters varies because that part of the process is handled by the area agencies.  A review of the notification letters submitted as Exhibit P to Plaintiffs' Memorandum of Law in Support of Motion for Partial Summary Judgment Pursuant to Fed. R. Civ. P. 56 on Counts II, VI and VII of the Complaint reveals that out of twenty-four letters from six different area agencies: ten mentioned neither the priority system outlined in He-M  522.11(c) nor the agency follow-up procedure outlined in He-M 522.11(f); six mentioned the priority system but not the follow-up procedure; five mentioned the follow-up procedure but not the priority system; and only three mentioned both the priority system and the follow-up procedure.

plaintiffs have moved for summary judgment on Counts II, VI, and VII. The court considers each count in turn.

I. Count I: 42 U.S.C. §§ 1396a(a)(17) and (19) & 42 C.F.R. §§ 440.230(b) and (d) – Right to Effective Service

In Count I, plaintiffs claim that they have been denied effective services to which they are entitled under the Medicaid Act. More specifically, they assert that defendants have violated their rights under: (1) 42 U.S.C. § 1396a(a)(17) by failing to administer the ABD/HCBC waiver program according to reasonable standards; (2) 42 U.S.C. § 1396a(a)(19), by failing to administer the program in the best interests of the recipients; (3) 42 C.F.R. § 440.230(b), by failing to provide ABD/HCBC waiver services that are sufficient in amount, duration, and scope to reasonably achieve the purposes of the ABD/HCBC waiver program; and (4) 42 C.F.R. § 440.230(d), by impermissibly limiting the availability of ABD/HCBC waiver services on the basis of criteria other than medical necessity, utilization control, and the like.

17

Defendants move for summary judgment on grounds that: (1) they enjoy constitutional protection, in the form of Eleventh-Amendment sovereign immunity, from suits brought to enforce the Medicaid Act; and (2) the Medicaid Act itself confers upon plaintiffs no rights that are enforceable under § 1983. Plaintiffs counter by contending that: (1) this suit, which seeks only prospective relief, does not impinge upon the State's sovereign immunity, under the doctrine of Ex parte Young, 209 U.S. 123 (1908); and (2) they do enjoy enforceable rights under each of the four statutory and regulatory provisions on which Count I is based. While the court agrees that the Eleventh Amendment does not pose a bar to prospective enforcement of provisions of the Medicaid Act, the court does not agree that plaintiffs enjoy rights enforceable through § 1983, under either 42 U.S.C. §§ 1396a(a)(17) and (19) or 42 C.F.R. §§ 440.230(b) and (d). Thus, defendants' motion for summary judgment is granted as to Count I.

A.   Eleventh-Amendment Sovereign Immunity

Under the Eleventh Amendment to the United States Constitution, "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  The Eleventh Amendment also bars "a citizen from suing his own State under the federal-question head of jurisdiction."  Alden v. Maine, 527 U.S. 706, 727 (1999) (citing Hans v. Louisiana, 134 U.S. 1, 14-15 (1890)) (denying Maine state workers the right to sue their employer, the State of Maine, in state court, for alleged violation of federal Fair Labor Standards Act).  However, the Eleventh Amendment does allow "suits against state officials seeking declaratory and injunctive relief against the state officials in their individual capacities who act in violation of federal law."  Strahan v. Coxe, 127 F.3d 155, 166 (1st Cir. 1997)(citing Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 269 (1997); Ex parte Young, 209 U.S. 123).

According to defendants, the doctrine of Ex parte Young is not applicable to suits brought to enforce the Medicaid Act. They rely upon Westside Mothers v. Haveman, 133 F. Supp. 2d 549 (E.D. Mich. 2001), a recent decision in the Southern Division of the Eastern District of Michigan. In Westside Mothers, the district court ruled, inter alia, that state officials responsible for administering Michigan's participation in the federal Medicaid program enjoyed Eleventh-Amendment immunity from suits brought by private parties to enforce the Medicaid Act, due to the inapplicability of the doctrine of Ex parte Young. Westside Mothers, 133 F. Supp. 2d at 560-61. And, defendants note that neither the United States Supreme Court nor the Court of Appeals for the First Circuit has addressed and rejected the position taken by the district court in Westside Mothers.

While of interest, Westside Mothers is, of course, not the law of the First Circuit. In this circuit, a state official acting in violation of federal law is not insulated by the Eleventh Amendment and may be sued for prospective injunctive

20

relief.  <u>Strahan</u>, 127 F.3d at 166.  Because this suit has been brought against the director of DDS and the commissioner of HHS in their individual capacities, alleges a violation of federal law, <u>i.e.</u>, the Medicaid Act, and seeks prospective relief, it is not barred by the Eleventh Amendment.  <u>See also</u> <u>Lewis v. New Mexico Dept. of Health</u>, 261 F. 3d 970 (10th Cir. 2001), <u>aff'g</u> 94 F. Supp. 2d 1217 (D.N.M. 2000) (rejecting Eleventh-Amendment challenge to suit brought by Medicaid recipients claiming that use of waiting list by state agency administering Medicaid waiver program violated 42 U.S.C. § 1396a(a)(8), Medicaid Act's "reasonable promptness" provision); <u>Doe 1-13 ex rel. Doe 1-13 v. Chiles</u>, 136 F.3d 709, 719-21 (11th Cir. 1998) (rejecting Eleventh-Amendment challenge to enforcement of § 1396a(a)(8)); <u>Boulet v. Cellucci</u>, 107 F. Supp. 2d 61, 74 (D. Mass. 2000) (Eleventh Amendment does not bar suit to enforce reasonable promptness provision of Medicaid Act).

B.   42 U.S.C. § 1983

In order to prevail on a § 1983 claim, a plaintiff must prove that one or more individual defendants, acting under color of state law, deprived him or her of a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Blessing v. Freestone, 520 U.S. 329, 340 (1997).  More specifically:

> In order to seek redress through § 1983 . . . a plaintiff must assert the violation of a federal right, not merely a violation of federal law.  Golden State Transit Corp. v. Los Angeles, 493 U.S. 103, 106 (1989).  We have traditionally looked at three factors when determining whether a particular statutory provision gives rise to a federal right.  First, Congress must have intended that the provision in question benefit the plaintiff.  Wright [v. City of Roanoke Redevelopment & Housing Auth., 479 U.S. 418,] 430 [(1987)].  Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence.  Id., at 431-432.  Third, the statute must unambiguously impose a binding obligation on the States.  In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.  Wilder [v. Virginia Hosp. Ass'n, 496 U.S. 498,] 510-511 [(1990)]; see also Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 17 (1981) (discussing whether Congress created obligations giving rise to an implied cause of action).

22

<u>Blessing</u>, 520 U.S. at 340-41 (emphasis in the original).

According to defendants, none of the four statutory or regulatory provisions relied upon by plaintiffs in Count I gives rise to a federally established right that is enforceable under § 1983. Plaintiffs disagree, categorically. The court examines each of these four provisions in turn.

<u>42 U.S.C. § 1396a(a)(17)</u>. This provision pertains to the standards under which a state evaluates the financial eligibility of potential Medicaid recipients. The portion of this provision on which plaintiffs rely states, in pertinent part:

A State plan for medical assistance must –

> **(17)** except as provided in subsections (<u>l</u>)(3), (m)(3), and (m)(4) of this section, include reasonable standards (which shall be comparable for all groups and may, in accordance with standards prescribed by the Secretary, differ with respect to income levels . . .) for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter,

23

> (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient . . ., (C) provide for reasonable evaluation of income or resources, and (D) do not take into account the financial responsibility of any individual for any applicant or recipient of assistance unless . . .

42 U.S.C. § 1396(a)(17). In plaintiffs' view: (1) defendants have not been operating the ABD/HCBC waiver program in accordance with reasonable standards; and (2) § 1396a(a)(17) entitles them to obtain a court order requiring defendants to do so. Specifically, plaintiffs claim that the ABD/HCBC waiver program is not being operated in a reasonable manner because it is inadequately funded, places arbitrary limits on the availability of ABD/HCBC waiver services, and lacks coordination among the various agencies involved in providing services. Defendants counter that: (1) § 1396a(a)(17) grants the states wide discretion in administering their Medicaid programs; (2) the language of this statute is similar to that of 42 U.S.C. § 1396a(a)(9), which at least one court has found not to create an enforceable federal right; and (3) the gravamen of plaintiffs'

24

complaint places it beyond the ambit of § 1396a(a)(17). The court accepts defendants' third argument.

"A straightforward reading of this language [§ 1396a(a)(17)] shows it governs the income calculations States use to determine whether an individual is eligible for Medicaid services." Prestera Ctr. for Mental Health Servs., Inc. v. Lawton, 111 F. Supp. 2d 768, 777 (S.D. W.Va. 2000) (citing Mitchell v. Lipscomb, 851 F.2d 734, 735 (4th Cir. 1988)). The statute "also provides a State can choose in its state plan whether or not to cover a particular medical procedure for Medicaid recipients, so long as the choice is reasonable." Prestera, 111 F. Supp. 2d at 777; see also, Hern v. Beye, 57 F.3d 906, 910-11 (10th Cir. 1995) (striking down, as violation of § 1396a(a)(17), Colorado constitutional amendment that prohibited funding for abortions for rape and incest victims, which was allowable under Hyde Amendment); Smith v. Palmer, 24 F. Supp. 2d 955, 963-64 (N.D. Iowa 1998), sub nom, Smith v. Rasmussen, 57 F. Supp. 2d. 736 (N.D. Iowa 1999), rev'd and remanded on other grounds, 249 F.3d

25

755 (8th Cir. 2001) (ruling that § 1396a(a)(17) gave plaintiff private right of action to challenge categorical exclusion of sex reassignment surgery).  The only reported First Circuit cases enforcing § 1396a(a)(17) pertain to the determination of financial eligibility for Medicaid benefits.  See, e.g., Lamore v. Ives, 977 F.2d 713 (1st Cir. 1992) (allowing certain veterans' benefits to be counted as income for purpose of determining eligibility for Medicaid benefits); Hogan v. Heckler, 769 F.2d 886 (1st Cir. 1985) (upholding six-month spend-down imposed upon medically needy Medicaid recipients).

This is not a case about determinations of financial eligibility for Medicaid benefits or decisions about covering particular categories of medical care.  Rather, it is a case about how many eligible recipients are able to participate in the ABD/HCBC waiver program – a category of care which has been approved for Medicaid reimbursement.  Thus, § 1396a(a)(17) is simply not implicated by plaintiffs' criticisms of the manner in which defendants administer the ABD/HCBC waiver program.

26

Accordingly, the court need not undertake an analysis under Blessing to determine whether this provision gives rise to a private cause of action that is enforceable under § 1983.

Because plaintiffs have alleged no facts supporting a claim that defendants have improperly determined their financial eligibility for Medicaid benefits or have impermissibly declined reimbursement for an entire category of medical care, defendants are entitled to judgment on that part of Count I claiming a violation of 42 U.S.C. § 1396a(a)(17).

42 U.S.C. § 1396a(a)(19). The second statutory provision plaintiffs seek to enforce in Count I provides, in its entirety:

A State plan for medical assistance must –

> **(19)** provide such safeguards as may be necessary to assure that eligibility for care and services under the plan will be determined, and such care and services will be provided, in a manner consistent with simplicity of administration and the best interests of the recipients.

27

According to plaintiffs, defendants have not operated the ABD/HCBC waiver program in their best interests, and should be enjoined to do so.  Specifically, plaintiffs claim that it is not in their best interests to be forced to spend years on the ABD/HCBC waiting list.  Defendants contend that § 1396a(a)(19), like the provision held unenforceable in Suter v. Artist M., 503 U.S. 347 (1992), is too general to be capable of proper judicial administration.  The court agrees.

The First Circuit has not addressed the question whether § 1396a(a)(19) creates a private right of action.  However, the Eleventh Circuit has determined that "this section [§ 1396a(a)(19)] imposes only a generalized duty on the States – in other words, the provision is insufficiently specific to confer any particular right upon the plaintiffs."  Harris v. James, 127 F.3d 993, 1010 (11th Cir. 1997) (citing Suter, 503 U.S. at 363).

> Other courts have reached similar conclusions with respect to § 1396a(a)(19).  See Bumpus v. Clark, 681 F.2d 679, 683 (9th Cir. 1982) ("Section 1396a(a)(19) is not the sort of specific condition for receipt of federal funds which can be said to create substantive

28

rights in Medicaid recipients."), <u>opinion withdrawn as moot</u>, 702 F.2d 826 (9th Cir. 1983); <u>Stewart v. Bernstein</u>, 769 F.2d 1088, 1093 (5th Cir. 1985) (citing <u>Bumpus</u> with approval); <u>Cook v. Hairston</u>, No. 90-3437, 948 F.2d 1288 (6th Cir. Nov. 26, 1991) (unpublished disposition) ("[T]he district court did not err in finding that the [provisions] in question were not sufficiently specific and definite to permit enforcement through § 1983.").

<u>Harris</u>, 127 F.3d at 1010 (footnote omitted). In light of the decision in <u>Harris</u> and the cases cited therein, and absent any contrary precedent in any other circuit, this court concludes that plaintiffs have no private right of action under § 1396a(a)(19) because that statute is too "vague and amorphous" to confer one, under the rule of <u>Blessing</u>, 520 U.S. at 340-41. Accordingly, defendants are entitled to judgment on that portion of Count I claiming a violation of 42 U.S.C. § 1396a(a)(19).

<u>42 C.F.R. §§ 440.230(b) and (d)</u>. 42 C.F.R. § 440.230, which is titled "Sufficiency of amount, duration, and scope," provides:

> (a) The plan must specify the amount, duration, and scope of each service that it provides for –
>
> (1) The categorically needy; and

29

(2) Each covered group of medically needy.

(b) Each service must be sufficient in amount, duration, and scope to reasonably achieve its purpose.

(c) The Medicaid agency may not arbitrarily deny or reduce the amount, duration, or scope of a required service under §§ 440.210 and 440.220 to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition.

(d) The agency may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures.

According to plaintiffs, defendants have violated 42 C.F.R. § 440.230(b) by establishing an ABD/HCBC waiver program that is insufficient in amount, duration, and scope to provide timely ABD/HCBC services to all eligible Medicaid recipients who desire them, and have violated 42 C.F.R. § 440.230(d) by limiting the availability of the ABD/HCBC waiver program according to criteria other than medical necessity or utilization control. Defendants counter that: (1) § 1983 may not be used to vindicate the regulatory provisions of § 440.230; (2) the regulations in question are directed to the services provided to individual recipients, not to the amount, duration, and scope of a program

30

as a whole; (3) the provisions of § 440.230 do not apply to the ABD/HCBC program because compliance with these requirements has been waived; and (4) even if the provisions of § 440.230 are enforceable, plaintiffs can establish no ongoing violation of these regulations.

As a preliminary matter, the court is persuaded by defendants' argument regarding the proper frame of reference from which compliance with 42 C.F.R. § 440.230 must be judged. According to plaintiffs, § 440.230(b) affords them the right to an ABD/HCBC waiver program that is sufficient in amount, duration, and scope to provide them with waiver slots immediately upon a determination of eligibility for the ABD/HCBC waiver program. But if § 440.230(b) is read as plaintiffs suggest, each New Hampshire Medicaid recipient who is eligible for the ABD/HCBC waiver program – even one receiving services that are sufficient in amount, duration, and scope to meet his or her own needs – would be entitled to force defendants to provide services to other Medicaid recipients until such time as the ABD/HCBC waiver

31

program, as a whole, becomes sufficient in amount, duration, and scope to meet the needs of all who desire to participate. Because the court does not accept the thesis that § 440.230(b) provides an individual Medicaid recipient with the right to sue for benefits to be provided to another, it adopts the reasoning of King ex rel. King v. Sullivan, 776 F. Supp. 645 (D.R.I. 1991). In that case, which included a claim to enforce the rights provided by § 440.230(b), under which "[e]ach service must be sufficient in amount, duration, and scope to reasonably achieve its purpose," the court ruled:

> The crucial interpretive problem, then, is understanding what is meant by "its purpose." As a simple semantic matter, of course, "its purpose" means the purpose of "each service."
>
> Contrary to Plaintiffs' contention, the Medicaid statute and regulations do not dictate a level of services that is sufficient in "amount, duration, and scope" to meet the purposes of the Medicaid program. Such a rule would, in essence, imply a federally-mandated minimum level of services that a state must provide; this would run counter to the flexible and cooperative nature of state participation in Medicaid. Instead, this regulation requires that any medical assistance service provided be adequate to reasonably achieve the purposes of the medical assistance service that the state offers in its State Plan. See Virginia

> Hosp. Ass'n v. Kenley, 427 F. Supp. 781, 785 (E.D. Va. 1977).

King, 776 F. Supp. at 652 (emphasis in the original).  Based upon the analysis in King, § 440.230(b) does not afford plaintiffs with a collective right to an ABD/HCBC waiver program of any particular size or scope; it gives each of them an individual right to have ABD/HCBC services, when such services are provided at all, that are sufficient in amount, duration, and scope to achieve the purposes for which those services were provided.[3]

---

[3] § 440.230(b) has been found to require, for example, that when a state offers eyeglasses under Medicaid, it cannot provide that benefit to persons with eye pathology, while excluding those with refractive error, see White v. Beal, 555 F.2d 1146 (3d Cir. 1977), nor can it limit an eyeglass benefit to "post-cataract surgery patients," Ledet v. Fischer, 638 F. Supp. 1288, 1289 (M.D. La. 1986), based upon the assumption that "the purpose of [a state's] optional eyeglass program under federal regulations is 'to aid or improve vision,'" id. at 1291.  According to the court in Ledet, an eyeglass program that has as its purpose the improvement of vision is not sufficient in amount, duration, and scope when eyeglasses are provided to some, but not all persons with vision that could be improved by eyeglasses.  Here, by contrast, plaintiffs have alleged no systematic exclusion based upon diagnosis or medical condition; they do not allege, for example, that ABD/HCBC waiver services are granted to persons with ABDs caused by brain tumors but are categorically denied to persons with ABDs caused by external trauma to the brain.
The reasoning that underlies White and Ledet was also

This approach to defining the scope of the right created by § 440.230(b) is consistent with the approach taken by the U.S. Supreme Court in Blessing. In that case, a class of mothers who received AFDC payments from the State of Arizona claimed "that they had an enforceable individual right to have the State's program achieve 'substantial compliance' with the requirements of Title IV-D." 520 U.S. at 333. The court disagreed, explaining that "the statutory scheme [cannot] be analyzed so generally," id., and urged remand to "the District Court to construe the complaint in the first instance, in order to determine exactly what rights, considered in their most concrete form, respondents are asserting," id. at 346. According to the Supreme Court,

---

applied in Preterm, Inc. v. Dukakis, 591 F.2d 121 (1st Cir. 1979), the only First Circuit case to derive an enforceable right from 42 U.S.C. § 440.230(b). In that case, the court held that a state Medicaid program is not entitled to fund only certain categories of medically necessary abortions (i.e., those that terminate pregnancies caused by forced rape or incest or that threaten the life of the mother, id. at 122-23), and thus provide services to some but not all persons with a qualifying medical condition (i.e., a medically complicated pregnancy, id. at 126). Here, plaintiffs do not claim that they are not receiving services, only that they are not receiving the kind of services they desire, which distinguishes this case from virtually all cases finding an actionable right under 42 C.F.R. § 440.230(b).

34

"[o]nly by manageably breaking down the complaint into specific allegations can the District Court proceed to determine whether any specific claim asserts <u>an individual</u> federal right."  <u>Id.</u> (emphasis added).  As applied to the facts of this case, the right claimed by plaintiffs under § 440.430(b) is analogous to the generalized right rejected by the Supreme Court in <u>Blessing</u>.

There is, in addition, a more fundamental problem with plaintiffs' position.  According to plaintiffs themselves, "[a] federal regulation may create an enforceable right under § 1983 when: (1) the federal statute pursuant to which the regulation was promulgated itself creates enforceable rights; (2) the regulation is within the scope of the statute; and (3) the regulation was intended to create enforceable rights."  (Pls.' Obj. to Defs.' Mot. Summ. J. at 30 (citing <u>Wright</u>, 479 U.S. 418).)  Plaintiff's position on the issue is consistent with <u>Harris</u>, which explained:

> <u>Wright</u> would seem to indicate that so long as the
> statute itself confers a specific right upon the
> plaintiff, and a valid regulation merely further

35

> defines or fleshes out the content of that right, then the statute – "in conjunction with the regulation" – may create a federal right as further defined by the regulation.

127 F.3d at 1008-09 (footnote omitted).  Here, however, the court has ruled that plaintiffs have no private right of action based upon 42 U.S.C. §§ 1396a(a)(17) or (19).  Thus, the regulations they seek to enforce, 42 C.F.R. §§ 440.230(b) and (d), do not describe enforceable rights conferred by statute.[4]  Because the regulations plaintiffs seek to enforce are not tied to any enforceable statute, in the context of this case, those regulations cannot fall within the scope of any such statute, or work in conjunction with any such statute, which makes them, under the circumstances of this case, unenforceable as a matter of law.[5]  Accordingly, defendants are entitled to judgment on

---

[4] The court further notes, in passing, that at least one court has observed that "[42 C.F.R.] § 440.230(b) implements [42 U.S.C.] § 1396a(a)(10)(B)," Sobky v. Smoley, 855 F. Supp. 1123, 1142-43 (E.D. Cal. 1994) (footnote omitted), which is not one of the statutes upon which plaintiffs rely for their cause of action in Count I.

[5] In so ruling, the court notes that in all of the cases cited by plaintiffs for the proposition that 42 C.F.R. § 440.230

that portion of Count I alleging violations of 42 C.F.R. §§ 440.230(b) and (d).

Because plaintiffs have no enforceable § 1983 claim based upon any of the statutes or regulations cited in Count I, defendants' motion for summary judgment is granted as to that count.

II. <u>Count II: 42 U.S.C. § 1396a(a)(8) & 42 C.F.R. § 435.930(a) – Right to Timely Care</u>

In Count II, plaintiffs claim that defendants' use of a waiting list for ABD/HCBC waiver services violates their right, under 42 U.S.C. § 1396a(a)(8) and 42 C.F.R. § 435.930(a), to be furnished Medicaid services with reasonable promptness. Defendants move for summary judgment on Count II on the same grounds raised with respect to Count I, and argue, in addition, that even if plaintiffs do have an enforceable right under §

---

is enforceable under § 1983, the regulation was paired with at least one enforceable statutory provision that remained in controversy.

1396a(a)(8), they (defendants) are entitled to judgment as a matter of law on the undisputed factual record because plaintiffs have all been deemed eligible for ABD/HCBC waiver services without any administrative delay. Plaintiffs defend against summary judgment on the same grounds they raised in defense against summary judgment on Count I, and, in addition, contend that they are entitled to judgment as a matter of law on the undisputed factual record, because despite having been deemed eligible for ABD/HCBC waiver services, they have not been provided, reasonably promptly, with the services for which they have been deemed eligible. Neither party is entitled to summary judgment on Count II.

For the reasons given above, the Eleventh Amendment poses no obstacle to obtaining the relief sought in Count II. See also Lewis, 261 F. 3d 970 (affirming denial of motion to dismiss, based upon Eleventh Amendment, when plaintiffs' claim was brought to enforce § 1396a(a)(8) reasonable promptness provision with respect to two Medicaid waiver programs). Turning to an analysis

38

under § 1983, the court is not persuaded by defendants' argument that 42 U.S.C. § 1396a(a)(8) is not enforceable under § 1983.

The relevant portion of the Medicaid Act provides as follows:

A State plan for medical assistance must –

> **(8)** provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals.

42 U.S.C. § 1396a(a)(8).

While the First Circuit has yet to decide whether a Medicaid recipient enjoys a private right of action to enforce § 1396a(a)(8), at least one circuit has held that Medicaid recipients "have a federal right to reasonably prompt provision of assistance under section 1396a(a)(8) of the Medicaid Act, and that this right is enforceable under section 1983." Doe, supra, 136 F.3d at 719 (citing Sobky, 855 F. Supp. at 1146-47 ("the

39

reasonable promptness clause confers enforceable rights on plaintiffs")); see also Boulet, 107 F. Supp. 2d at 74 (enforcing § 1396a(a)(8) reasonable promptness requirement in class action brought to force state to provide benefits under Medicaid waiver program). Furthermore, while it has yet to decide the question of the enforceability of § 1396a(a)(8) under § 1983, see Lewis 261 F.3d at 977, the Tenth Circuit has held that for purposes of an Eleventh-Amendment sovereign-immunity analysis, plaintiffs' claim that 1396a(a)(8) "creates a binding obligation on the states is not frivolous." Id.

Defendants, on the other hand, have pointed to no contrary precedent. Moreover, the First Circuit has held that "individual AFDC recipients possess standing to bring a private action against the State, under 42 U.S.C. § 1983, to enforce their right to prompt disbursement of their child-support entitlements under Titles IV-A and IV-D of the Social Security Act." Albiston v. Maine Comm'r of Human Servs., 7 F.3d 258, 269 (1st Cir. 1993). The statute the court of appeals found enforceable in Albiston

40

provides that AFDC "'[g]ap' payments . . . must be 'furnished with reasonable promptness to all eligible individuals.'" Id. at 260 (quoting 42 U.S.C. § 602(a)(10)). Given the similarity between the statutory language in Albiston and the pertinent statutory language in this case, the holding in Lewis, and absent any precedent to the contrary, the court concludes that plaintiffs in this case may employ § 1983 to enforce the reasonable promptness provision of § 1936a(a)(8).

The fact that plaintiffs seek waiver services, rather than Medicaid services that the state is required to provide, does not relieve defendants of the obligation to provide the services it has chosen to provide with reasonable promptness.

> "[W]hen a state elects to provide an optional service, that service becomes part of the state Medicaid plan and is subject to the requirements of federal law." Tallahassee Memorial Regional Medical Center v. Cook, 109 F.3d 693, 698 (11th Cir. 1997) (per curiam); see also McMillan v. McCrimon, 807 F. Supp. 475, 481-82 (C.D. Ill. 1992) ("The fact that the [Home Services Program] is an optional service does not exempt it from the requirements of section 1396a(a)(8).").

41

Doe, 136 F.3d at 714. See also Sobky, 855 F. Supp. at 1127

("once a state elects to provide an optional service such as

methadone maintenance, that service becomes part of the state

Medicaid plan and is subject to the requirements of federal law")

(citing Weaver v. Reagen, 886 F.2d 194, 197 (8th Cir. 1989)

(imposing 42 C.F.R. § 440.230 requirements on state's optional

prescription drug program); Eder v. Beal, 609 F.2d 695, 701-02

(3rd. Cir. 1979) (imposing statutory notice requirement as

precondition for state's termination of optional eyeglass

program); Clark v. Kizer, 758 F. Supp. 572, 575 (E.D. Cal. 1990),

aff'd in part and vacated in part on other grounds sub nom.,

Clark v. Coye, 967 F.2d 585 (9th Cir. 1992) (table) (imposing

multiple § 1396a and § 440.230 requirements on state's optional

program for adult dental care); King v. Smith, 392 U.S. 309, 316

(1968)). More specifically:

> Pursuant to 42 U.S.C. § 1396n(c), states are permitted
> to apply for a waiver to use their federal Medicaid
> money to pay for home or community-based services, i.e.
> waiver services. The statute refers to these services
> as "medical assistance." Another provision of the
> Medicaid Act provides that "[a] state plan for medical
> assistance must . . . provide that all individuals

wishing to make application for medical assistance under the plan shall have the opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8). Given that the latter provision requires that all medical assistance be provided with "reasonable promptness" and that the waiver provision refers to waiver services as "medical assistance" the Court concludes that Congress intended the "reasonable promptness" requirement to apply to waiver services. Accord Doe v. Chiles, 136 F.3d 709, 715 (11th Cir. 1998); Sobky v. Smoley, 855 F. Supp. 1123, 1146 (E.D. Cal. 1994). As reasoned by the court in McMillan v. McCrimon, 807 F. Supp. 475, 482 (C.D. Ill. 1992), this determination is supported by the fact that the waiver provision expressly allows the Secretary to waive certain Medicaid Act requirements, 42 U.S.C. § 1396n(c)(3), but does not include the "reasonable promptness" provision in this list of exemptions.

Lewis, 94 F. Supp. 2d at 1233-34; see also Boulet, 107 F. Supp. 2d at 76 ("Traditional statutory analysis supports a finding that, once a state opts to implement a waiver program and sets out eligibility requirements for that program, eligible individuals are entitled to those services and to the associated protections of the Medicaid Act."). Based upon the foregoing, the court concludes that the reasonable promptness requirement applies to New Hampshire's ABD/HCBC waiver program.

43

Finally, the court acknowledges, but rejects, defendants'
argument that § 1396a(a)(8) pertains to administrative delays but
not delays in the actual provision of services.  While the court
in Albiston used 45 C.F.R. § 206.10(a)(5)(i) to construe the
phrase "reasonable promptness" in 42 U.S.C. § 602(a)(10) as
meaning "an absence of delay due to the State's administrative
process," 7 F.3d at 267 (emphasis omitted), Albiston does not
limit the reasonable promptness requirement in this case to
reasonable promptness in administrative process.  In Albiston,
plaintiffs themselves framed the case as being about "'systemic'
administrative deficiencies," id. at 261, in the state's
procedure for making AFDC "gap" payments.  Furthermore, AFDC
"gap" payments appear to be a benefit that is provided entirely
administratively, by the writing and mailing of a check.  So, in
Albiston, an administrative delay was tantamount to a delay in
providing services.  Because the services at issue in Albiston
are materially different from the services at issue here, the
court declines to read Albiston as entitling plaintiffs to
nothing more than reasonable promptness in administrative

44

processing.  Rather, the court relies upon: (1) the plain language of the statute itself (". . . such <u>assistance</u> shall be furnished with reasonable promptness to all eligible individuals" (emphasis added)); and (2) those cases that have construed § 1396a(a)(8) to impose the reasonable promptness requirement on both the administrative  aspect of benefit delivery and the actual delivery of services.  <u>See</u>, <u>e.g.</u>, <u>Doe</u>, 136 F.3d at 719; <u>Boulet</u>, 107 F. Supp. 2d at 79 ("§ 1396a(a)(8)'s statement that 'medical assistance' be furnished with reasonable promptness indicates that the reasonable promptness requirement must apply to the services themselves, rather than only to eligibility determinations, as defendants argue") (citing <u>Sobky</u>, 855 F. Supp. at 1147); <u>Lewis</u>, 94 F. Supp. 2d at 1236;; <u>Linton ex rel. Arnold v. Carney ex rel. Kimble</u>, 779 F. Supp. 925, 936 (M.D. Tenn. 1990); <u>Clark</u>, 758 F. Supp. at 580.

Having established plaintiffs' private right of action to enforce § 1396a(a)(8), and defendants' obligation to operate the ABD/HCBC waiver program in conformity with the requirements of

45

the Medicaid Act, including the reasonable promptness provision, the court now turns to the merits of the parties' cross-motions for summary judgment.

Defendants argue that: (1) any delays that plaintiffs have encountered are reasonable because they arise from the logistical complexities of providing ABD/HCBC services, which are highly individualized and time-consuming to arrange; (2) the State is allowed to limit the provision of waiver services to only a subgroup of the relevant eligible population, which is necessary in order for defendants to abide by the waiver program's cost-neutrality requirement; and (3) most members of the plaintiff class, if not all, will be off the waiting list by the end of the current biennium.

Plaintiffs contend that defendants have violated – and continue to violate – the reasonable promptness requirement of § 1396a(a)(8) and its associated regulations by: (1) having a waiting list at all; (2) allowing the waiting list to move at an

unreasonably slow pace, leaving some persons on it for as long as seven years; (3) failing to fill all the waiver slots that have been approved by HCFA; and (4) failing to apply for the statutory minimum of 200 waiver slots.

The basic thrust of plaintiffs' argument is that many of defendants' practices – the existence of which defendants do not seriously dispute – violate § 1396a(a)(8), which entitles them to summary judgment. However, the issue is not quite so uncomplicated as deciding, for example, that use of a waiting list is unlawful under any circumstances, or that two years on the waiting list constitutes an unreasonable delay, as a matter of law. One complicating factor, given limited attention by plaintiffs, is the cost-neutrality requirement of the waiver program, as set out in 42 U.S.C. § 1396n(c)(2)(D). While defendants are statutorily obligated to provide ABD/HCBC waiver services with reasonable promptness, the concept of reasonable promptness must take into account defendants' statutory obligation not to violate the basic cost-neutrality requirement

47

of the waiver program.  Thus, if defendants' delays in providing plaintiffs with ABD/HCBC waiver services are attributable to adherence to the cost-neutrality requirement, these delays cannot be unreasonable.  On the record before the court, defendants' ability to provide the relief requested by plaintiffs without violating the cost-neutrality requirement would appear to be a material fact in dispute precluding summary judgment. Accordingly, both parties' motions for summary judgment on Count II are necessarily denied on this record.

III. Count VII: 42 U.S.C. § 1396a(a)(3) & 42 C.F.R. §§ 435.911-435.920 – Right to Notice and Hearing

In Count VII, plaintiffs claim that defendants have violated their rights under 42 U.S.C. § 1396a(a)(3) by failing to provide them with adequate notice regarding decisions placing them on the ABD/HCBC waiting list, and by failing to provide them with hearings related to those decisions.  Defendants move for summary judgment on grounds that plaintiffs have not received any adverse decisions concerning Medicaid eligibility, and therefore have not been deprived of any rights under § 1396a(a)(3).  Plaintiffs

counter that the decision to place an otherwise eligible applicant for ABD/HCBC waiver services on a waiting list constitutes an adverse determination regarding the receipt of Medicaid benefits, because persons on the waiting list are, for all practical purposes, effectively denied benefits for which they have applied and are plainly eligible. In their motion for summary judgment, plaintiffs go considerably further, adding a claim that defendants have violated 42 U.S.C. § 1396n(c)(2)(C) by failing to notify potential applicants for the ABD/HCBC waiver program about the existence of the waiver and the available choice between institutional and ABD/HCBC waiver services.

Because plaintiffs did not invoke § 1396n(c)(2)(C) as a basis for relief in their complaint, they cannot now seek summary judgment on a claim that defendants have violated that statutory provision. Moreover, because the plaintiff class is comprised of eligible persons on the ABD/HCBC waiver program waiting list, it is not at all clear how any of them could have standing to claim that defendants have failed to comply with a statutory obligation

49

to fully inform potential participants of the availability of the ABD/HCBC waiver program. Accordingly, to the extent plaintiffs' motion for summary judgment on Count VII is based upon § 1396n(c)(2)(C), the motion is denied. However, for the reasons stated below, that portion of plaintiffs' motion for summary judgment that relates to Count VII, as originally pled, is granted.

The Medicaid Act provision relevant to Count VII provides as follows:

A State plan for medical assistance must –

> **(3)** provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness.

42 U.S.C. § 1396a(a)(3).

Defendants do not appear to argue that § 1396a(a)(3) is unenforceable under § 1983, and indeed, it seems beyond question that § 1396a(a)3) meets the tests set out in <u>Blessing</u>. <u>See</u>,

50

e.g., <u>Cramer v. Chiles</u>, 33 F. Supp. 2d 1342, 1351-52 (S.D. Fla. 1999) (ruling that when state phased out funding for private intermediate care facilities for the developmentally disabled ("ICF/DDs"), thus requiring recipients of that Medicaid service to choose between public ICF/DD and HCBC waiver services, § 1396a(a)(3) entitled them to adequate notice and hearing). Moreover, for reasons set out above, it also seems clear that the hearing requirement – just like the reasonable promptness requirement – applies with full force to waiver programs. Accordingly, the court need only consider whether the decision to place – or keep – a person on the ABD/HCBC waiting list triggers the hearing requirement of § 1396a(a)(3).

This looks to be a question of first impression. The positions of the parties are relatively straightforward. Defendants argue that this case involves no denial of services because all members of the plaintiff class have been found eligible to receive ABD/HCBC waiver services, and most are, in fact, receiving ABD services, albeit in institutional settings.

51

They argue, as well, that to the extent eligibility decisions are made within the twenty-one day time frame mandated by DDS regulations, applications for the ABD/HCBC waiver program are acted upon with reasonable promptness. Plaintiffs disagree, arguing that being deemed eligible for services, and then being placed on an interminable waiting list to receive those services, constitutes either: (1) a de facto denial of services, because, as a logical matter, a person whose access to a medical service has been deferred has been denied that service until such time as the deferral period expires; or (2) a failure to act upon a claim for medical assistance (by failing to provide medical assistance with reasonable promptness). Plaintiffs further argue that because a finding of eligibility coupled with an indefinite deferral of services constitutes a denial of services, or a failure to act on a claim for services, the decision to place an applicant on a waiting list is a decision to which the Medicaid Act's notice requirement applies. The court agrees.

Resolution of this cause of action depends, to a certain extent, on the final resolution of Count II. That is, if it is determined that defendants are obligated to operate the ABD/HCBC waiver program without a waiting list of any kind, as plaintiffs contend, then the court's final order after a hearing on the merits will eliminate the need for the relief requested in Count VII, making this claim moot. If, on the other hand, the court rules that use of a waiting list is permissible under certain circumstances, such as defendants' inability to create waiver slots without violating the cost-neutrality requirement or a legitimate need to accommodate modest and unavoidable delays in effecting placements, then this count will not be moot.

Assuming, for the sake of argument, that a waiting list is permissible under limited circumstances, the court agrees with plaintiffs that placement on the waiting list could constitute a substantive, albeit non-permanent, denial of ABD/HCBC waiver services. And, because those services constitute an entitlement, see Boulet, 107 F. Supp. 2d at 77, applicants placed on a waiting

53

list do have a right to a fair hearing related to the determination that relegated them to the waiting list, and the priority assigned to them. Such a hearing would allow applicants to present evidence and argue at least two issues: (1) the potential cost of the waiver services they seek, which would be relevant to whether the requested services would jeopardize defendants' ability to abide by the cost-neutrality requirement; and (2) the data used by area agency staff members to place applicants in one of the two waiting list priority categories, and to move applicants off the waiting list and into ABD/HCBC placements. Accordingly, the court rules that if defendants are permitted to place applicants on a waiting list, then they are required by 42 U.S.C. § 1396a(a)(3) to provide those applicants placed on the waiting list with a fair hearing regarding that decision.

For the reasons given, and to the extent defendants are permitted to place applicants on a waiting list, plaintiffs'

54

motion for summary judgment on Count VII, as pled, is granted and defendants' motion for summary judgment on Count VII is denied.

IV.   Count VI: Due Process – Right to Notice and Hearing

In Count VI, plaintiffs claim that defendants have denied them due process of law by failing to provide them with adequate notice of the decisions that placed them on the ABD/HCBC waiting list, and by failing to provide them with hearings related to those decisions.  Because this constitutional claim merely restates the claims made in Count VII, under 42 U.S.C. § 1396a(a)(3), and because plaintiffs would not be entitled to any more or different relief under this claim than they are due under Count VII, Count VI is moot, and the court need not reach the constitutional question presented.

V.   Count V: Due Process – Right to Reasonable Decision-Making

In Count V, plaintiffs claim that defendants denied them due process of law by failing to administer the ABD/HCBC waiver program in accordance with written, objective, reasonable, and

55

ascertainable standards for determining which eligible applicants will receive ABD/HCBC waiver services and which will not. More specifically, plaintiffs complain that "it is impossible for persons to ascertain with a reasonable degree of certainty their status or position on the 'wait list' as compared to others on the 'wait list,' or when they will be removed from the 'wait list' to begin receiving home and community-based services." (Am. Compl. ¶ 129.) Defendants move for summary judgment on grounds that the undisputed factual record shows that HHS has promulgated, and the area agencies follow, a detailed set of rules for determining who is placed on the waiting list, what priority level each applicant is assigned, how priority for services is determined within each priority category, and how the information necessary for making these determinations is to be updated. Plaintiffs respond that defendants have failed to produce sufficient facts to rebut the factual showing that they have made. The Court does not agree.

Plaintiffs base Count V on the proposition that "the establishment of written, objective, and ascertainable standards [for distributing public benefits] is an elementary and intrinsic part of due process," Baker-Chaput v. Cammett, 406 F. Supp. 1134, 1140 (D.N.H. 1976) (ordering Town of Raymond Overseer of the Poor to produce written welfare standards and guidelines). The purpose of the court's order in Baker-Chaput was to curtail "[t]he standardless administration of general assistance [which] places the hungry and the poor at the administrator's whim and does little to foster the belief, so important in a democratic society, that justice has been served." Id. at 1139. Here, by contrast, the undisputed factual record shows that HHS has promulgated written standards, set out in He-P 522, for both assessing eligibility for the ABD/HCBC waiver program, and managing the waiting list. While plaintiffs claim that under defendants' regulations and practices one cannot predict when he or she will be moved from the waiting list to a waiver slot, that is not due to an absence of standards that leaves area agency personnel to administer the waiting list at their own whim.

57

Rather, the standard used to move a person from the waiting list into a waiver slot – the immediacy and magnitude of his or her needs – is an inherently fluid standard. Thus, while the description of that standard in He-P 522.11(d) does not necessarily inform an applicant as to when her particular needs will place her at the top of the priority list, it does adequately inform her of the basis on which such decisions are made. That is, the standards governing operation of the waiting list, as written, provide applicants with a sufficient basis to present facts and legal argument at a hearing held in connection with an area agency's decision to assign a particular priority status to an applicant for ABD/HCBC waiver services.

Because the undisputed factual record demonstrates that defendants do have written, objective, and ascertainable standards for managing the ABD/HCBC waiver program waiting list, defendants are entitled to judgment as a matter law on Count V. Accordingly, defendants' motion for summary judgment is granted as to Count V.

58

VI.  Counts III & IV: ADA & Section 504 - Integration Mandate &
     Disability-Based Discrimination


     In Count III, plaintiffs claim that because ABD/HCBC waiver

services are the most integrated ABD services appropriate to

their needs, defendants have violated their rights under the

integration mandates of the ADA and section 504 by failing to

provide them with those services.  In Count IV, plaintiffs claim

that defendants' administration of the ABD waiver program limits

the availability of ABD/HCBC waiver services based on severity of

need, and, thus, constitutes disability-based discrimination in

violation of the ADA and section 504.  Defendants move for

summary judgment on both counts on grounds that their

administration of the ABD/HCBC waiver program satisfies the

requirements set out by the United States Supreme Court in

Olmstead v. LC ex rel. Zimring, 527 U.S. 581 (1999), by virtue

of: (1) the existing construct through which ABD/HCBC services

are currently offered; (2) recently increased funding for the

ABD/HCBC waiver program; and (3) their ongoing plan to increase

the overall capacity of programs that serve those with ABDs.

Plaintiffs resist summary judgment by contending that material facts remain in dispute with respect to defendants' claim to be operating the ABD/HCBC waiver program in conformity with the requirements of Olmstead. The court agrees.

Because Title II of the ADA, the provision at issue here, is modeled on section 504, see Parker v. Universidad de Puerto Rico, 225 F.3d 1, 4 (1st Cir. 2000), the court will conduct a single analysis of the claims based on these two statutes. See also Makin ex rel. Russell v. Hawaii, 114 F. Supp. 2d 1017, 1036 (D. Haw. 2000) ("the 'integration mandate' of [section 504] appears to set the same standard as the ADA provision"). According to the ADA:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. According to regulations that implement the ADA:

A pubic entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities.

28 C.F.R. § 35.130(d). These regulations further provide that:

A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

28 C.F.R. § 35.130(b)(7).

In Olmstead, the Supreme Court decided issues arising from requests from two mentally retarded women to be moved from institutional placements to Georgia's HCBC waiver program. Id. at 583. Their claim was based upon the ADA integration mandate, id., and was premised upon the idea that home and community-based care was the most integrated setting appropriate for providing them with the services to which they were entitled under the Medicaid Act. The Supreme Court largely agreed, holding that

61

"[u]njustified isolation [of Medicaid recipients in institutions] . . . is properly regarded as discrimination based upon disability." Id. at 597. In Olmstead, as here, defendants mounted a cost-based defense. The Supreme Court remanded the case because the court of appeals had applied an unduly restrictive interpretation of the fundamental-alteration defense. Id. The Supreme Court went on to explain that a district court considering a fundamental-alteration defense "must consider, in view of the resources available to the State, not only the cost of providing community-based care to the litigants, but also the range of services the State provides others with mental disabilities, and the State's obligation to mete out those services equitably." Id. The Court further explained:

> To maintain a range of facilities and to administer services with an even hand, the State must have more leeway than the courts below understood the fundamental-alteration defense to allow. If, for example, the State were to demonstrate that it had a comprehensive, effectively working plan for placing qualified persons with mental disabilities in less restrictive settings, and a waiting list that moved at a reasonable pace not controlled by the State's endeavors to keep its institutions fully populated, the reasonable-modifications standard would be met. See

62

> Tr. of Oral Arg. 5 (State's attorney urges that, "by asking [a] person to wait a short time until a community bed is available, Georgia does not exclude [that] person by reason of disability, neither does Georgia discriminate against her by reason of disability"); see also id., at 25 ("[I]t is reasonable for the State to ask someone to wait until a community placement is available."). In such circumstances, a court would have no warrant effectively to order displacement of persons at the top of the community-based treatment waiting list by individuals lower down who commenced civil actions.

Id. at 605-06 (footnote omitted).

As noted above, defendants argue that they are entitled to summary judgment on Counts III and IV because they meet the standard set in Olmstead. Plaintiffs contend that summary judgment is precluded by genuine issues of material fact concerning: (1) the reasonableness of the pace at which the waiting list moves; and (2) the existence of a comprehensive, effectively working plan for moving Medicaid recipients from the waiting list to home and community-based placements. Because the court agrees that there are genuine issues of material fact as to defendants' compliance with the rule established by Olmstead,

63

defendants' motion for summary judgment is denied as to Counts III and IV.


## Conclusion

For the reasons given: (1) defendant's motion for summary judgment (document no. 19) is granted as to Counts I and V, denied as to Counts II, III, IV, and VII, and moot as to Count VI; and (2) plaintiff's motion for partial summary judgment (document no. 20) is granted as to Count VII, denied as to count II, and moot as to Count VI.  Accordingly, this case shall proceed to trial on Counts II, III, and IV.


The Clerk of Court shall enter judgment in accordance with this order.  Trial is now set to begin at 9:00 a.m. on December 3, 2001.

64

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

October 23, 2001

cc:  Sheila O. Zakre, Esq.
     Suzanne M. Gorman, Esq.